Larry J. **GRIMES**, Plaintiff–Respondent,

v.

Victor **BAGWELL**, Sr., Defendant–Appellant.

No. 17891.

Missouri Court of Appeals, Southern District, Division One.

Aug. 20, 1992.

Motion for Rehearing or Transfer to Supreme Court Denied Sept. 11, 1992.

Victor Bagwell, Sr., pro se.

John P. Heisserer, Rickey, Rice, Spaeth, Heisserer & Summers, Cape Girardeau, for plaintiff-respondent.

PARRISH, Chief Judge.

Victor Bagwell (defendant) appeals a judgment entered against him in an action for malicious prosecution. Following a trial before the court without a jury, judgment was entered for Larry J. Grimes (plaintiff) in the amount of $1,200 actual damages and $50 punitive damages. This court affirms with respect to the award of actual damages and reverses with respect to the award of punitive damages.

This is the third time that this case has been before this court. *See Grimes v. Bagwell*, 809 S.W.2d 441 (Mo.App.1991), and *Grimes v. Bagwell*, 728 S.W.2d 688 (Mo.App.1987). This court's review in the present appeal is undertaken pursuant to

Rule 73.01(c). The parameters of that review are as follows.

The judgment of the trial court must be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. In considering whether the judgment of the trial court is "against the weight of the evidence," this court may exercise its power to set aside the judgment of the trial court only with caution and only if it possesses a firm belief that the judgment is wrong. In undertaking this review, this court is mindful of the opportunity of the trial court to have judged the credibility of the witnesses and gives due regard thereto.

*Chowning v. Magness,* 792 S.W.2d 438, 439 (Mo.App.1990) (citations omitted).

The following is a chronology of events pertinent to this appeal:

| Date | Activity |
|---|---|
| May 27, 1983 | Defendant sold a truck and trailer to plaintiff and received plaintiff's undated check in the amount of $6,500 that represented the purchase price. |
| June 3, 1983 | Plaintiff and defendant entered into a written contract for the sale of the truck and trailer from defendant to plaintiff. |
| June 28, 1983 | According to defendant's testimony, he dated the check that he had received from plaintiff by writing "6–28–83" on it. |
| "[M]iddle of July," 1983 | Defendant attempted to cash the check but the bank upon which it was drawn refused to pay the check. |
| July 17, 1983 | Defendant talked to a Scott County deputy sheriff and a Scott County jailer about the check and the truck and trailer. The jailer testified that there was no date on the check when he saw it. The deputy sheriff testified that he told defendant that if there was no date on the check, it was a civil matter, not a criminal matter. |
| July 18, 1983 | Defendant went to the office of the Prosecuting Attorney of Scott County seeking assistance and spoke to a secretary in that office. Defendant told her that the check was not a hold check and that it had been given to him in Scott County. No criminal charges were filed. |
| July 22, 1983 | Defendant went to the office of the Prosecuting Attorney of Butler County and spoke to a secretary in that office. Defendant told her the check was not a hold check and that the truck had been stolen. The check had the date of June 28, 1983, on it. |

---

Criminal charges against plaintiff were filed following defendant's trip to the Butler County Prosecutor's office. The prosecution was based upon the information that defendant provided. Those charges were subsequently dismissed, however, when the prosecuting attorney learned that the check defendant had received was undated at the time it was given to defendant by plaintiff.

On August 2, 1983, defendant obtained possession of the truck and trailer for which he had received the undated check. Defendant accomplished this by civil action in replevin.

Defendant presents three points on appeal. He contends that the trial judge erred in not disqualifying himself. He contends that the trial court erred in entering judgment for plaintiff because "there was no substantial evidence ... that [defendant] acted maliciously in prosecuting [plaintiff]," and that the finding of the trial

court in that respect is against the weight of the evidence. Defendant's third point contends that the trial court erred in finding for plaintiff "because [plaintiff] was in fact guilty of a criminal offense."

Plaintiff's brief suggests that defendant's first point on appeal does not conform to the requirements of Rule 84.04(d) and, therefore, preserves nothing for review. The requirements of Rule 84.04(d) include:

> The points relied on shall state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous, with citations of authorities thereunder.

.    .    .    .    .

In *Bentlage v. Springgate*, 793 S.W.2d 228, 229 (Mo.App.1990), this court observed:

> Three things are required with respect to points relied on: (1) a statement of the action or ruling of the trial court about which the party complains; (2) a statement that specifies why the ruling was erroneous; and (3) a statement informing the appellate court wherein the evidence at trial supports the position the party asserts the trial court should have taken.

It based its assessment on *Thummel v. King, infra,* saying:

> In *Thummel v. King*, 570 S.W.2d 679, 685 (Mo. banc 1978), the supreme court gave the following explanation of the "wherein and why" in points relied on. The court explained the context of Rule 84.04 as follows:
>
> "[C]ompliance with these requirements is a matter of common sense if counsel bear in mind the informational purpose of the brief. After stating the ruling the trial court actually made, it stands to reason that the point should then specify *why* the ruling was erroneous. This requirement essentially contemplates a statement which ordinarily will closely approximate what appellant believes should have been the trial court's conclusion of law on the point being addressed. After stating why the ruling was erroneous, the court

> then must be informed *wherein* the testimony or evidence gives rise to the ruling for which appellant contends."

■■■ Defendant's first point on appeal states only that "the trial court erred in not disqualifying himself as the judge in this case on the ground that the trial court was biased and prejudiced against the [defendant] as detailed in part I of the argument." Defendant's first point does not state "wherein" evidence at trial supported defendant's assertion of bias and prejudice by the trial court. The requirements of Rule 84.04(d) are mandatory. *Black v. Cowan Const. Co.*, 738 S.W.2d 617, 619 (Mo. App.1987). As plaintiff has asserted, defendant's first point on appeal preserves nothing for review.

■ Mindful, nevertheless, that on occasion appellate courts have been tolerant to the extent that they have looked to the argument portion of briefs for purposes of plain error although particular "points relied on" have been deficient, this court has reviewed the argument portion of defendant's brief that is directed to his first point on appeal. *See, e.g., Hoffman v. Koehler*, 757 S.W.2d 289, 292 (Mo.App. 1988). That review reveals no error on the part of the trial court, plain or otherwise, with respect to defendant's complaint that the trial judge should have, *sua sponte,* disqualified himself. Defendant's first point is denied.

Defendant's second point complains that there was either no substantial evidence to support the trial court's judgment or that the judgment is against the weight of the evidence because "there was no evidence that [defendant] acted maliciously in prosecuting [plaintiff]."

A malicious prosecution action consists of six elements: "(1) commencement of a prosecution against the plaintiff; (2) its instigation by the defendant; (3) its termination in favor of the plaintiff; (4) absence of probable cause for the prosecution; (5) presence of malice; and (6) damage to plaintiff." *Schumer v. Craig Distrib. Co.*, 745 S.W.2d 163, 165 (Mo.App.1987) (citation omitted). Defendant's second point is limit-

ed to an attack on element number 5, the presence of malice, in that defendant does not contest the presence of the other elements.

*Sanders v. Daniel Int'l Corp.*, 682 S.W.2d 803 (Mo. banc 1984), provides a thorough discussion regarding the element of "malice." It holds that "malice" exists in a malicious prosecution action if a "defendant acted primarily for a purpose other than that of bringing an offender to justice and acted without reasonable grounds." *Id.* at 814 n. 4.

■ In this case defendant stated that his efforts to have plaintiff prosecuted were undertaken in order that he would either be paid or have his truck returned; that all he wanted was to have defendant "brought in" so that defendant would tell him where the truck was; that he wanted the law enforcement personnel "to go out and arrest [plaintiff]" so that he could find out where the truck was. Defendant's testimony was sufficient to permit the trial court to have found that defendant acted for a purpose other than to bring an offender to justice. The trial court could have found, and apparently did find, that defendant's actions that resulted in plaintiff's prosecution were undertaken primarily for the purpose of attempting to collect a debt that defendant considered was owed to him by plaintiff rather than for the primary purpose of bringing an offender to justice for having committed a penal wrong.

■ Implicit in malice, insofar as a cause of action for malicious prosecution is concerned, is the requirement that defendant, in causing the plaintiff's prosecution, acted without having reasonable grounds for his conduct. "The phrase 'reasonable grounds' ... means the existence of facts which would warrant an ordinarily cautious and prudent person in believing [the person prosecuted] was guilty of the offense charged." MAI 16.05 (1980 New); *see Haswell v. Liberty Mutual Ins. Co.*, 557 S.W.2d 628, 633 (Mo. banc 1977).

■ On May 27, 1983, when defendant received the check which was the basis upon which defendant undertook to have plaintiff prosecuted, the check was undated. Plaintiff told defendant that the check would be good in thirty days and defendant agreed to hold the check for thirty days. Six days later, on June 3, 1983, the parties entered into a written contract that embodied the terms of the agreement between plaintiff and defendant for the sale and purchase of the truck and trailer. The agreement provided that plaintiff would pay $6,500 to defendant in thirty days. In making that agreement, plaintiff anticipated receiving money from an insurance policy within the thirty days in which he was to pay defendant. The agreement provided, however, that if the money were not received, alternative financing was to be obtained within a reasonable time.

When defendant began consulting with law enforcement personnel and staff members of prosecuting attorneys in Scott and Butler Counties, he was repeatedly told that a "hold" check was not a sufficient basis for a criminal prosecution on a "bad check" charge. In seeking advice from those persons who he consulted, defendant misrepresented various facts. He told some of those who he consulted that the check was in the same condition as when he had received it when, in fact, he had inserted a date on the previously undated check, and the date he had inserted was a date other than the date on which he received the check. He erroneously told the personnel from Scott County that the check was given to him in Scott County. He changed his story about what happened after law enforcement personnel and others suggested he had a civil dispute, not a criminal matter. The trial judge had sufficient evidence upon which to find that defendant did not act upon reasonable grounds in pursuing the criminal prosecution of plaintiff.

This court does not possess a firm belief that the trial court's judgment is wrong with respect to its finding that "malice," as an element of malicious prosecution, was present. Nor does it find that the trial court erroneously applied or declared the law in awarding plaintiff ordinary damages. Defendant's second point is denied

with respect to the trial court's award of ordinary damages to plaintiff.

■ A different result is required, however, insofar as the punitive damages that were awarded by the trial court are concerned. In order to award punitive damages, there must be a finding of "actual malice," i.e., that the act complained about was "prompted or accompanied by ill will, or spite, or grudge, either toward the injured person individually, or toward all persons in one or more groups or categories of which the injured person is a member." E. Devitt & C. Blackmar, 3 Federal Practice and Instructions § 85.11, at 121 (3rd ed. 1977), as quoted and approved in *Sanders v. Daniel Int'l Corp.*, *supra*, at 815–16. The evidence in this case falls short of showing that defendant's actions in securing the prosecution of plaintiff were the result of "actual malice." Defendant's second point is granted with respect to the trial court's award of punitive damages.

■ Defendant's third point asserts that the trial court erred in finding the issues in favor of plaintiff because plaintiff "was in fact guilty of a criminal offense under the law despite the fact that the check was [a] hold check, it was undated, and the date was filled in by [defendant] at a later date." The finding of actual guilt or innocence of a criminal offense is not an element of malicious prosecution. Whether plaintiff was guilty or innocent, to the extent known by defendant, would have had a bearing in determining if defendant's actions that caused plaintiff to be prosecuted were based upon reasonable grounds— whether there was malice.

In arguing that plaintiff was guilty of a crime, defendant refers to §§ 400.3–114[1] and 400.3–115. These statutes are part of the Uniform Commercial Code as adopted in Missouri and as was in effect in 1983. They do not address or relate to criminal offenses, but refer to whether the postdating of a check affects its negotiability (§ 400.3–114) and to authorization for completing incomplete instruments that were signed while they were incomplete (§ 400.3–115). These things are without significance. They relate to civil proceedings.

Defendant also cites *State v. Taylor*, 335 Mo. 460, 73 S.W.2d 378 (1934), in arguing that plaintiff could be prosecuted for a crime. He contends that *Taylor* stands for the proposition "that a defendant could be prosecuted for a postdated check." *Taylor* involved the question of whether the issuance of a post-dated check constituted a violation of a particular misdemeanor statute, § 4305, RSMo 1929. Section 4305, RSMo 1929, states as follows:

Any person who, to procure any article or thing of value, of for the payment of any past due debt or other obligation of whatsoever form or nature, or who, for any other purpose shall make or draw or utter or deliver, with intent to defraud any check, draft or order, for the payment of money, upon any bank or other depository, knowing at the time of such making, drawing, uttering or delivering, that the maker, or drawer, has not sufficient funds in, or credit with, such bank or other depository, for the payment of such check, draft, or order, in full, upon its presentation, shall be guilty of misdemeanor, and punishable by imprisonment for not more than one year, or a fine of not more than one thousand dollars, or by both fine and imprisonment.

The defendant in *Taylor* purchased twine and, in payment for the twine and to pay part of an old account, gave a post-dated check in the amount of $163.50. Both the defendant and the person to whom he gave the check knew that the funds in the account upon which the check was drawn were insufficient to pay the check at the time it was given. The defendant represented, however, that there would be sufficient funds in the account when the date that was placed upon the check arrived. The court held that the conduct of the defendant in making the representations that funds would then be available in the account was fraud; that the person who received the check "relie[d] upon the maker's promise to do something in the future

---

1. References to statutes are to RSMo 1978 unless stated otherwise.

rather than upon an assurance, express or implied, that the check [was] good when given" was sufficient proof that the offense was committed. 73 S.W.2d at 383.

*Taylor* is of no assistance to defendant for two reasons. First, its facts differ from those in this case. In this case, the very terms of the contract that the parties entered into on June 3, 1983, provided that if the funds upon which plaintiff relied in giving the undated check to defendant did not arrive within thirty days, plaintiff would have a reasonable time in which to arrange alternate financing. Second, the law is no longer in accord with that stated in *Taylor*. The applicable statute at the time plaintiff gave defendant the check in this case was § 570.120.1. Its pertinent part states:

> A person commits the crime of passing a bad check when, with purpose to defraud, he issues or passes a check or other similar sight order for the payment of money, knowing that it will not be paid by the drawee, or that there is no such drawee.

Under that statute and its successor revisions:

> [I]ntent to defraud is an element of the crime of passing a bad check. Intent is determined as of the time the check is issued. *State v. Warren*, 628 S.W.2d 410, 412 (Mo.App.1982). When a payee accepts a check knowing it is not good and with the understanding that he will not present it for payment until later, the drawer who gave the payee the insufficient funds check is not criminally liable on the basis of fraud. *See State v. Phillips*, 430 S.W.2d 635, 637 (Mo.App.1968).

*Schumer v. Craig Distrib. Co., supra,* at 164 n. 2.

Defendant was repeatedly told the status of the law with respect to the offense of passing a bad check. Nevertheless, he continued to seek to have plaintiff prosecuted, finally getting a prosecuting attorney to file a stealing by deceit charge against plaintiff by representing to the prosecuting attorney that the check which defendant received was dated when it was received by defendant. Defendant has not shown that plaintiff committed any crime and has, therefore, not shown that he had reasonable cause to prosecute plaintiff and was thereby free of malice. Defendant's third point is denied.

The part of the judgment of the trial court that assesses ordinary damages is affirmed. The part of the judgment that assesses punitive damages is reversed and the case remanded with instructions to amend the judgment by deleting the assessment of punitive damages.

CROW, P.J., and SHRUM, J., concur.