Homer J. HUBBS, Respondent–Appellant,

v.

Dortha J. HUBBS, Appellant–Respondent.

Nos. 18516, 18527.

Missouri Court of Appeals,
Southern District.
Division One.

Jan. 5, 1994.

Motion for Rehearing or Transfer
to Supreme Court Denied
Jan. 27, 1994.

Application to Transfer Denied
March 22, 1994.

Harold G. Johnson and Mitchell D. Johnson, St. Ann, for appellant-respondent.

Charles T. Rouse, Salem, for respondent-appellant.

PARRISH, Chief Judge.

This is an appeal from the part of the judgment in a dissolution of marriage case that distributed marital property. Both Dortha J. Hubbs (wife) (No. 18516) and Homer J. Hubbs (husband) (No. 18527) appeal. The appeals were consolidated. This court affirms.

The parties were married March 29, 1962. Both have children from prior marriages. There were no children from this marriage. The trial court entered written findings of fact and conclusions of law. The following findings by the trial court are pertinent to these appeals.

While both parties alleged and testified at trial the other was guilty of misconduct, the court finds that such testimony was not credible and the parties failing to produce independent evidence of such conduct, the court finds no misconduct subject to three exceptions. First, [husband's] assault upon [wife] which was the subject of the jury trial.[1] Second, [husband] violated [the trial] court's restraining order.[2] Third, [wife] concealed marital assets by not fully answering interrogatories posed to her.

. . . . .

The court finds the livestock sold in Springfield for $6,700.00 represents a squandering of marital property for which [husband] must account. The court notes [husband's] testimony wherein he stated he lost interest in cattle *after* the separation. Accordingly, the [husband] failed to account for the disappearance of some 27 cows and anywhere from 12 to 22 calves between August of 1989 and July of 1990. The court finds the livestock sold at the South Central Regional Stockyards in Vienna for $2,053.00 ..., and finally at the South Central Regional Stockyards in Vienna for $10,039.89 ... represent a concerted effort by [husband] and his children to conceal marital property.

The trial court awarded marital property valued at $282,956.92 to husband and directed him to pay debts of $30,889.19 encumbering the farm and farm equipment he re-

1. The parties filed causes of action against one another for battery. Those actions were tried before a jury. The jury returned verdicts in favor of wife in her claim against husband and in husband's claim against wife and awarded $5,500 actual damages and $15,000 punitive damages to her.

2. The trial court entered a restraining order December 21, 1989, that included the following restrictions:

[B]oth parties are hereby restrained and enjoined from transferring, concealing, squandering, disposing of or otherwise secreting the marital assets of the parties, including, but not limited to their various bank accounts, except for normal and necessary expenditures, and that both parties are ordered to account to one another in this Court for any extraordinary expenditures;

. . . . .

Both parties [are] ordered to account to the Court for all property that has been sold, transferred or otherwise disposed of subsequent to the separation of said parties. Other than the parties normal and necessary living expenses no property having a value greater than $100.00 shall be sold, transferred or otherwise disposed of by either party without the consent of the other said party or by Court order.

ceived.[3] It awarded marital property valued at $415,229.45 to wife. The trial court's judgment further provided:

> The court credits to [husband] the sum of $24,260.89 for violation of [its] restraining order. The court credits to [wife] the sum of $22,016.15 for violation of [its] restraining order....
>
> In order to balance the equities, the court orders [wife] to pay to [husband] $80,-508.99 less the $20,500.00 jury award ($60,-008.99).

The trial court's judgment is reviewable as provided in Rule 73.01.

> That review is governed by the constraints imposed in *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). The judgment of the trial court must be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Id.* In considering whether the judgment of the trial court is "against the weight of the evidence," this court may exercise its power to set aside the judgment of the trial court only with caution and only if it possesses a firm belief that the judgment is wrong. *Id.* In undertaking this review, this court is mindful of the opportunity of the trial court to have judged the credibility of the witnesses and gives due regard thereto. Rule 73.01(c)(2).

*Chowning v. Magness,* 792 S.W.2d 438, 439 (Mo.App.1990).

### No. 18516

Wife's first point on appeal is directed to the trial court's order that all of her pension benefits and all of a "thrift and savings plan" she had was marital property. The trial court's findings regarding those assets state:

> Contributions to pension plans prior to the marriage are not subject to division. *Schinker v. Schinker,* 747 S.W.2d 761 (Mo. App.1988). However, [wife] made no effort to establish the amount she accumulated in her pension and savings plan before and after the marriage, therefore, under

*Hall v. Hall,* 804 S.W.2d 411 (Mo.App. 1991), and *In Re Marriage of Medlock,* 749 S.W.2d 437 (Mo.App.1988), the court finds the entire plan marital.

Wife contends the trial court erred in its assessment that she "made no effort to establish the amount she accumulated in her pension and savings plan before and after the marriage." She contends "she was not given notice and opportunity to address these issues" in a second hearing before the trial court; that the trial court led her to believe the issue was resolved at the first hearing in a manner favorable to her "and therefore there was no need for further proof."

On October 10, 1991, the trial court ordered the marriage dissolved and took the property issues in the case under advisement. On February 11, 1992, the trial court entered written findings of fact and conclusions of law and judgment. The findings relative to wife's pension plan and savings plan were that the pension plan at her place of employment provided benefits to her of "an approximate value of One Hundred Eighteen Thousand Two Hundred Fifty Two Dollars ($118,252.00)," and the value of her savings plan at the date the parties separated was "One Hundred Eighty–Seven Thousand Six Hundred Forty–Six [Dollars] ($187,-646.00)." The findings stated that this was the product of 29 years of employment while the parties were married and 6 years of employment before wife and husband married. The trial court found, "As a result the percentage of time respondent was married to petitioner and contributing towards the retirement benefits she has accrued is 82.8% which places a value of Ninety Seven Thousand, Nine Hundred Twelve Dollars ($97,-912.00) as marital property." The trial court found that the balance of $20,340.00 of the value of the pension plan was not marital property.

The trial court, in its February 11, 1992, findings, applied the same formula to the value of wife's savings plan. It found that 82.8%, or $155,370.89, was marital property

---

**3.** The trial court found that the farm was encumbered by debt in the amount of $22,255.58 and the farm equipment by debt of $8,633.61.

and the balance, $32,275.11, was not marital property.

After the initial findings and conclusions and judgment were entered, wife moved to amend the judgment asserting that an asset the trial court attributed to her, a $30,000.00 certificate of deposit, did not exist. She asked the court to delete it from the assets it found to be marital assets.

Husband filed a motion for reconsideration and rehearing contending that certain property should not have been found to be marital property. He also challenged the valuation of certain personal property and requested the trial court to reconsider the finding that part of wife's pension plan and part of her savings plan was nonmarital property. Husband asserted that the evidence supported the determination that all the value of the pension plan and all the value of the savings plan should be classified as marital property.

After hearing oral arguments on the motions, the trial court "set aside the judgment as to the property division and debts." The trial judge advised the parties he would hear evidence to determine if he had "made some kind of a mistake." The verbatim record of the trial was made by magnetic tape recording. The trial judge told the parties he would be listening to the recording to determine if any assets were included as marital property that should not have been.

Additional evidence was heard August 25, 1992, after which the trial court entered new findings of fact and conclusions of law and judgment. Those findings included the determination that the entire value of wife's pension plan and savings plan was marital property.

By her first point, wife challenges the notice she was given regarding the scope of evidence that would be heard at the trial court's second evidentiary hearing. She contends she was not notified that the trial court would consider additional evidence to determine whether all of the pension plan and savings plan was marital property.

In support of her first point, wife relies on *Hoppe v. St. Louis Public Service Co.*, 361 Mo. 402, 235 S.W.2d 347 (banc 1950); *Lee v.*

*Baltimore Hotel,* 345 Mo. 458, 136 S.W.2d 695 (1939); *Dougherty v. Manhattan Rubber Mfg. Co.,* 325 Mo. 656, 29 S.W.2d 126 (1930); and *Champ v. Poelker,* 755 S.W.2d 383 (Mo. App.1988). These cases are of no assistance to wife. They involve trial courts granting new trials or otherwise amending judgments without giving notice to the adversely affected parties or permitting them to be heard. Those are not the facts in this case.

In this case, both parties filed motions seeking modifications of the original marital property awards. The issue of whether the entire value of wife's pension plan and savings plan should be included in the marital property valuation was raised in husband's motion. The trial court heard oral arguments on the motions and set the original awards aside. It scheduled a hearing at which it heard additional evidence. Both parties offered evidence at the hearing.

Husband's motion stated, "[Husband] believes and requests that 100% of [wife's] retirement benefits ... be set off as marital property and be divided accordingly or alternatively that [wife] be required to produce evidence as to what was in her plan at the time of marriage." As to the savings plan, the motion alleged, "[T]he Court has erred in setting off any of the Thrift Plan as nonmarital property." The motion stated, "[Husband] urges that all of the Thrift Plan be treated as marital in the division of property."

Wife argues that she believed the part of the original judgment regarding the pension plan and the savings plan "had been resolved at the first hearing in [her] favor and therefore there was no need for further proof." That assessment was erroneous. Wife's claim that she did not have notice that the trial court would reconsider whether all the value of the pension plan and savings plan should be marital property is refuted by the record. The trial court's order setting aside the judgment with respect "to the property division and debts" left nothing in the original judgment remaining with respect to the property classification and award.

When an order is set aside or vacated the result is the destruction of the order in its

entirety, its effectiveness is ended, the previously existing status is restored, and the effect is the same as though such order had never existed....

60 C.J.S. *Motions and Orders* § 62(6) (1969). Wife's first point is denied.

■ Wife's second point is also directed to the trial court's determination that the entire value of her pension plan and savings plan was marital property. She contends the trial court erred in including the values of those plans, in their entirety, as marital property because that determination was "against the weight of the evidence."

We need only state that the trial court is entitled to believe or disbelieve the testimony of either party and can disbelieve expert testimony. *In re the Marriage of Ebinger,* 573 S.W.2d 738, 741 (Mo.App., St.L.D.1978); *Hopkins v. Hopkins,* 639 S.W.2d 249, 250 (Mo.App., W.D.1982).

*In re Marriage of Smith,* 785 S.W.2d 764, 767 (Mo.App.1990). "[T]he trial court, when sitting as the trier of fact, may believe all or none of the testimony of a witness, or accept it in part and reject it in part." *Mangan v. Mangan,* 554 S.W.2d 418, 421 (Mo.App.1977). *See also In re Marriage of Ebinger,* 573 S.W.2d 738, 741 (Mo.App.1978).

■ As the trial court stated in its findings, "Contributions to pension plans prior to the marriage are not subject to division. *Schinker v. Schinker,* 747 S.W.2d 761 (Mo. App.1988)." This court's review of the record on appeal reveals no evidence that wife's pension and savings benefits began the date she began her employment with the company from which they are derived. There was no evidence as to how the pension was computed, the exact date when the pension benefits accrued, nor the date when the plan began. The evidence establishing the commencement of the savings plan is as scant as the evidence with respect to wife's pension benefits. A witness who worked for wife's employer testified regarding the savings plan. He was asked the following questions by

wife's attorney and gave the following answers:

Q. Do you know if that investment account was active at that time [i.e., when wife began working for her present employer], or do you know either way?

A. I have heard of a number of our employees who have been working there a long time ago who said they only wished that such a plan existed at that time; so, apparently—

Q. You don't know when that was started then, what year?

A. No, I don't.

■ Wife did not adduce evidence from which the trial court could determine the date when her pension benefits began accruing nor the date when she commenced her savings plan. The only information the trial court had was that wife accrued pension benefits and deposited funds in the savings plan during the marriage. As such, it correctly held, based on the evidence before it, that the value of the pension plan and savings plan was marital property in its entirety. *See Schinker, supra.* In the course of its review, this court considers only the record made before the trial court. *Couch v. Director, Missouri State Division of Family Services,* 795 S.W.2d 91, 94 (Mo.App.1990). Wife's second point is denied.

■ Wife's third point is directed to the trial court's finding that $5,409.23 that was withdrawn from a joint bank account of wife and her son, Alfred, was marital property. Wife contends this finding was erroneous "because the [trial] court misunderstood the testimony of Alfred and there was no evidence marital money was in the account."

The trial court found:

Alfred testified the [wife] on January 1, 1992, withdrew from this account $5,409.23 to pay her attorney.[4] [Wife] testified this account was opened in 1980 with $3,038.23 in an account numbered 607396 with Community Federal, the predecessor to Boatmen's Bank. Alfred testified he opened

---

**4.** This court's review of the record does not reveal evidence that supports the finding that wife used the money withdrawn from this account to pay attorney fees. The lack of information about

the use wife made of the funds does not detract from the trial court's finding that the funds were originally "marital money."

only two accounts ..., one with an income tax refund and the other through savings. The court concludes the source of the $5,409.23 was marital money.

"The burden of demonstrating error belongs to the party challenging the trial court's decree." *Ibrahim v. Ibrahim,* 825 S.W.2d 391, 393 (Mo.App.1992). *See also Parking Systems, Inc. v. Kansas City Downtown Redevelopment Corp.,* 518 S.W.2d 11, 16 (Mo.1974); *Massman Const. Co. v. Kansas City,* 487 S.W.2d 470, 478 (Mo.1972); *Calia v. Calia,* 624 S.W.2d 870, 872 (Mo.App. 1981); *Naeger v. Naeger,* 542 S.W.2d 344, 346 (Mo.App.1976); *Weston v. Great Central Ins. Co.,* 514 S.W.2d 17, 21 (Mo.App.1974); *State ex rel. Mayfield v. City of Joplin,* 485 S.W.2d 473, 476 (Mo.App.1972).

The trial court, in holding that the money in the joint bank account at Boatmen's Bank was marital property, referred to "Exhibit CC," the summary of the account—account No. 662607396. Wife contends, "[T]here was no evidence marital property was in the account as shown by Exhibit CC in that no reasonable inferences could be drawn from such an exhibit to support the [trial] court's finding."

Alfred's name was on three joint accounts with his mother. His testimony before the trial court accounted for only two of the joint accounts. He testified that he had deposited $2,500.00 in account No. 61444058 at Boatmen's Bank and that he had $2,500.00 in an account at Roosevelt Federal Savings and Loan Association (Roosevelt Federal) that had been given to him by his mother. The Roosevelt Federal account was No. 11–0606912. As far as Alfred knew, the money he put in the Roosevelt Federal account that was given to him by his mother was still there.

The last two pages of Exhibit CC reflect that a certificate of deposit was issued in 1980 to husband and wife by Community Federal Savings and Loan Association (Community Federal). Community Federal later became Boatmen's Bank. The Community Federal account number for the 1980 certificate of deposit issued to husband and wife,

No. *607396,* was similar to the account number for the joint account in Boatmen's Bank, the successor institution. The Boatmen's Bank account number was No. 662*607396.*

The history card for the account shows Alfred and his mother as owners beginning January 9, 1988. On January 9, 1988, the account's opening balance was $4,491.74. On January 9, 1992, $5,409.23 was withdrawn from the account leaving an overdraft of $545.65. Alfred was asked if he withdrew the money on January 9, 1992, or transferred money from the account on that date. He answered, "I never closed the account." He testified that he "guessed" his mother received the money that was withdrawn from the account.

Alfred did not account for the origin of the funds in the joint account at Boatmen's Bank. There was evidence that wife withdrew those funds for her benefit. This evidence is consistent with the trial court's finding that the funds in the joint account were marital property. "The judgment [of the trial court] is to be affirmed under any reasonable theory supported by the evidence." *Ware v. Ware,* 647 S.W.2d 582, 584 (Mo.App.1983). Wife's third point is denied.

■ For her fourth point, wife asserts that the trial court's division of marital property was an abuse of discretion because "the court failed to take into consideration the factors listed in Section 452.330.1 [5] including wife's greater contribution to the marital property after the final separation and husband's misconduct of dissipating marital property and perjury." She contends the trial court's distribution of marital property "is not supported by substantial evidence and is in conflict with the relevant law."

■ The trial court is presumed to have followed the law unless that presumption is contradicted by the record. *Binkley v. Binkley,* 725 S.W.2d 910, 912 (Mo.App.1987). The conclusions of the trial court acknowledged that the distribution of marital property was governed by § 452.330.1. This court finds nothing in the record that indicates the trial court did otherwise.

■ Property division in a dissolution of marriage proceeding should reflect the mar-

---

5. References to statutes are to RSMo Supp.1992.

riage as a shared enterprise. *In re Marriage of Hash*, 838 S.W.2d 455, 460 (Mo.App. 1992). The division of marital property should be substantially equal unless one or more statutory or non-statutory facts causes such a division to be unjust. *Id.* at 459–60. This court finds no abuse of discretion by the trial court in its distribution of marital property. Wife's fourth point is denied.

### No. 18527

■ Husband attempts to present eight points on appeal. Six of the points do not comply with Rule 84.04.

Rule 84.04 prescribes the requirements for appellate briefs. Subsection (a) of that rule states:

The brief for appellant shall contain: (1) A concise statement of the grounds on which jurisdiction of the review court is invoked; (2) A statement of the facts; (3) The points relied upon; and (4) An argument which shall substantially follow the order of "Points Relied On."

Subsection (d) states:

The points relied on shall state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous, with citations of authorities thereunder. . . .

■ As explained in *Thummel v. King*, 570 S.W.2d 679 (Mo. banc 1978):

[C]ompliance with these requirements is a matter of common sense if counsel bear in mind the informational purpose of the brief. After stating the ruling the trial court actually made, it stands to reason that the point should then specify *why* the ruling was erroneous. This requirement essentially contemplates a statement which ordinarily will closely approximate what appellant believes should have been the trial court's conclusion of law on the point being addressed. After stating why the ruling was erroneous, the court then must be informed *wherein* the testimony or evidence gives rise to the ruling for which appellant contends.

*Id.* at 685. These requirements are mandatory. *Grimes v. Bagwell*, 837 S.W.2d 554, 557 (Mo.App.1992). Points on appeal that do not comply with Rule 84.04 present nothing for review. *In Interest of J.L.C.*, 844 S.W.2d 123, 126 (Mo.App.1992).

Notwithstanding *Thummel's* admonitions and instructions and notwithstanding frequent reminders that the rule's requirements are mandatory, those requirements all too frequently have gone unheeded. *See Emery v. Emery*, 833 S.W.2d 453, 455 (Mo.App. 1992); *Cook v. Wadlington*, 821 S.W.2d 864, 865–66 (Mo.App.1991); *Estate of Goslee*, 807 S.W.2d 552, 556 (Mo.App.1991); *McMullin v. Borgers*, 806 S.W.2d 724, 730 (Mo.App.1991); *Bentlage v. Springgate*, 793 S.W.2d 228, 229–31 (Mo.App.1990); *Hoffman v. Koehler*, 757 S.W.2d 289, 292 (Mo.App.1988).

Appellate courts have methodically analyzed faulty points relied on and explained the deficiencies in detail in hopes of providing road maps for future appeals. *See, e.g., Bentlage v. Springgate, supra.*[6] Warnings have been sounded. *See, e.g., White v. White*, 846 S.W.2d 212, 213–14 (Mo.App. 1993). These efforts appear to have had little effect.

Husband's first, seventh and eighth points on appeal do not state "wherein and why" the trial court's actions were erroneous. His second point fails to state "why" the ruling about which he complains was erroneous. The third point and first part of the fifth point do not state "wherein" the excluded testimony was supportive of husband's position. The last part of the fifth point attempts to inject an additional point. It does not state "wherein and why" the action about which he complains was erroneous.

■ Husband's fourth point complains the trial court erred in its valuation of the farm and other marital property he received. The value assigned to property by the trial court was derived from evidence presented by expert witnesses called by wife. The experience and other credentials of the witnesses established their credibility. The trial court obviously gave more credence to wife's

---

**6.** This court does not fathom that a detailed postmortem of husband's faulty points would add to the explanation found in *Thummel, supra*. For that reason, it will limit any analysis of husband's points on appeal to the identification of their deficiencies.

witnesses than husband's. This court finds no abuse of discretion by the trial court. An appellate court will defer to the trial court's assessment of the credibility of witnesses. *Brandt v. Brandt,* 794 S.W.2d 672, 674 (Mo. App.1990). Husband's fourth point is denied.

Husband's remaining point, point six, contends the trial court erred in denying his request for attorney fees. Husband argues that wife willfully concealed and failed to disclose joint bank accounts with her son that contained marital property; that he was required to incur additional expenses and to present evidence at a second hearing; that the trial court should have awarded attorney fees to him as recompense for these efforts.

"To show an abuse of discretion of the trial court in denying attorney fees, the complaining party has the burden to show that the order is against the logic of the circumstances and is arbitrary and unreasonable." *Smith v. Smith,* 839 S.W.2d 382, 386 (Mo. App.1992). Husband did not meet that burden. Point six is denied.

The judgment is affirmed.

SHRUM and MONTGOMERY, JJ., concur.