David K. RHODUS, Respondent,

v.

Leslie R. McKINLEY, Appellant.

Nos. WD 57133, WD 57289.

Missouri Court of Appeals,
Western District.

Feb. 8, 2000.

Application for Transfer Denied
May 30, 2000.

*See also* 972 S.W.2d 557.

Richard Koury, II, Independence, for appellant.

David Holdsworth, Liberty, for respondent.

PAUL M. SPINDEN, Judge.

David K. Rhodus appeals the circuit court's judgment dividing marital property in its decree dissolving his marriage to Leslie R. McKinley. McKinley cross-appeals the circuit court's valuation of bank accounts and the award of attorney fees to Rhodus. We affirm the circuit court's judgment in part and reverse in part.

On September 22, 1995, Commissioner Michael W. Walker issued a recommended judgment to the circuit court. Rhodus filed a motion for rehearing in circuit court. On February 14, 1996, Commissioner Walker "reopened" the case to reconsider division of the couple's property and Rhodus' request for attorney fees. On December 30, 1996, Commissioner Walker entered a recommended order awarding four items of property to McKinley and awarding $3100 and attorney fees of $20,-

506.78 to Rhodus. The circuit court issued judgments in which it adopted and confirmed Commissioner Walker's decisions of September 22, 1995, and of December 30, 1996. Rhodus and McKinley file cross-appeals.[1]

Although we are doubtful that a family court commissioner has authority to "reopen" a case to grant rehearing once the circuit court has adopted and confirmed the commissioner's findings and recommendations, we do not address the issue in this case. The circuit court, which did have authority to grant rehearing, adopted Commissioner Walker's second decision after the rehearing as its own when the circuit court still had jurisdiction.

■■■ In reviewing the circuit court's judgment, we recognize that the circuit court has broad discretion in dividing marital property. We will disturb the circuit court's decisions in dividing marital property only when they are so "heavily and unduly weighted in favor of one party as to amount to an abuse of discretion." *Allen v. Allen*, 961 S.W.2d 891, 893 (Mo.App. 1998) (quoting *Dodson v. Dodson*, 904 S.W.2d 3, 6 (Mo.App.1995)). The circuit court's obligation is to divide the marital property fairly according to the factors enumerated in § 452.330.1.[2] *Carter v. Carter*, 940 S.W.2d 12, 16 (Mo.App.1997).

■■ Rhodus first disputes the circuit court's decision that his using $53,500 from the sale of calves to "pay down" a debt of a cattle and grain business created "a $53,-500 marital interest in [Rhodus'] cattle business." Rhodus does not contest that he used the proceeds from the 1995 sale of calves to discharge $53,500 of the business' debt or that the calves sold were marital property. Central to his complaint is that he did not realize a profit from the gross

sale proceeds, so, he argues, "the award of the 'pay down' in the amount of $53,500 to [Rhodus] as marital property was an error which actually penalizes [Rhodus] for operating his business." His point is without merit.

■■ Section 452.330.2 defines marital property as "all property acquired by either spouse subsequent to the marriage." Calves born to cattle owned as separate property by a husband or wife should be deemed to be property acquired subsequent to marriage. *Elder v. Elder*, 824 S.W.2d 520, 521 (Mo.App.1992); *In re Marriage of Williams*, 639 S.W.2d 236, 237 (Mo.App.1982). Because the calves were produced and sold after Rhodus' marriage to McKinley, the circuit court correctly deemed them to be marital property.

That the business was not profitable is of no consequence. Rhodus used money that he held jointly with McKinley to pay a business debt. To the extent that the business remained his separate property, as Rhodus maintains, his using jointly-held money to pay a business debt, in effect, gave McKinley an interest in the business.

■■ Rhodus asserts that the circuit court treated the business as marital property. We disagree. By applying all of the calf sale's proceeds to pay his business debt, Rhodus used marital property to pay a nonmarital debt. If property acquired before marriage is subject to a loan, "the property becomes marital property to the extent marital funds are used to pay off the loan." *Mika v. Mika*, 728 S.W.2d 280, 282 (Mo.App.1987).[3] The circuit court found that Rhodus created a marital interest in his business to the extent that he used marital funds to increase the value of his separate property. The payment erased $53,500 of his business debt and

---

1. This is the second time for this court to consider this appeal. We dismissed the first appeal *sua sponte* on the ground that we lacked jurisdiction because the circuit court had not entered a judgment. *Rhodus v. McKinley*, 972 S.W.2d 557 (Mo.App.1998).

2. Unless otherwise noted, all citations of statutes refer to the 1998 Supplement to the Revised Statutes of Missouri.

3. Overruled on separate grounds by Cates v. Cates, 819 S.W.2d 731, 736 (Mo. banc 1991).

increased his business' value by the same amount. The circuit court did not err by including the payment in his share of marital property and in ordering him to execute a promissory note to McKinley for her share of the $53,500.

Rhodus complains in his next point that the circuit court included in the couple's marital property the proceeds from two cows belonging to McKinley because he used the proceeds to cover the costs of rearing McKinley's calves. For the same reason as the previous point—that calves born to cows separately owned by a spouse after marriage should be deemed marital property—we find no merit in his contention.

■ Rhodus next contends that the circuit court erred in designating "[McKinley's] herd" (the cows that had not been sold before the trial) as containing 19 cows, nine heifers, seven steers, and 16 calves. Rhodus maintains that he sold the nine heifers and seven steers at the Mo–Kan sale barn; therefore, the decree already accounted for them as a separate item. In December 1994, James Hertzog appraised the cattle before the sale and the cattle remaining at Rhodus' farm and testified:

[COMMISSIONER WALKER]: Now, first of all, in your appraisal, which is [E]xhibit 21, you list 19 four to five year old cows, 9 heifers, and 7 steers.

JAMES HERTZOG: Uh huh.

Q: And you were asked the question, ["H]ow many of those were sold on [E]xhibit 7,["] and you said[, "A]ll of them.["]

I thought the sale on [E]xhibit 7[was] calves out of those 19 four to five year old cows.

A: No, I[—]well, maybe I didn't make myself clear; all the calves were sold.

Q: All right.

A: And two cows.

Q: These that were sold on [E]xhibit 7 are calves out of these 19 cows?

A: Correct[, a]nd they're itemized out down there with 9 heifers and 7 steers.

Along with other evidence, this evidence supported Rhodus' claim that the calves sold at Mo–Kan sale barn in December 1995 were the nine heifers and seven steers to which Hertzog referred in the appraisal. They did not remain in McKinley's herd of cattle at trial, nor did the two cows also sold at the sale barn. Rhodus stipulated to the existence of 17 of McKinley's cows on his property at the time of trial, and that confirms that the circuit court overstated the number of livestock remaining in McKinley's herd. The decree, in effect, credited these calves twice in Rhodus' share of marital property. The circuit court's judgment as to the value of McKinley's remaining herd of cattle was against the weight of the evidence, so we reverse it.

Hertzog estimated that the remaining 17 cows' value with their calves was $700 a pair. We remand this case to the circuit court with instruction that it reduce the value of "[McKinley's] herd" from $20,895 to $11,900, and that it reduce Rhodus' promissory note to McKinley by $8995 to $33,205.

■ Rhodus' next point is that the circuit court erred in not determining the value of McKinley's "gain-sharing plan and production incentive plan," which the circuit court awarded to McKinley. This point has no merit because Commissioner Walker's recommended judgment of December 30, 1996, assigned a value of $8716.73 to the production incentive plan and $15,492.20 to the gain-sharing plan.

■ We assume that Rhodus objects to the valuations because Commissioner Walker set the values based on evidence of the bonuses' worth on dates other than the date of trial. "Because of the untold number of 'pension plans' which appear to have their own singular and unique requirements for meeting 'vesting' and 'maturing' provisions, it is imperative that trial courts

be authorized to apply a flexible approach to accommodate the particular facts of each case." *Kuchta v. Kuchta,* 636 S.W.2d 663, 665 (Mo. banc 1982). The two bonus plans in question share with pensions the difficulty of assigning a value to assets that accrue over time but are not paid until the end of a preordained period. To receive a gain-sharing bonus, McKinley had to remain employed through December 31, 1995, and the amount of the bonus was based on a percentage of "the firm's net operating profit." The quarterly bonus was a percentage of the fees she billed over a certain threshold each quarter. The parties presented evidence attempting to establish the prorated values of the bonuses that McKinley was entitled to on August 18, 1995, the date of trial.

The circuit court, as recommended by Commissioner Walker, used McKinley's actual bonuses, paid on September 30, 1995, and on December 31, 1995, as the values for the distribution of property. It stated that those amounts were "the closest valuation in time to the hearing date[.]" The circuit court classified the portions of the quarterly bonus and profit-sharing bonus accrued through August 18, 1995, as marital property. It awarded both bonuses to McKinley, along with other items of marital property. The parties presented sufficient evidence to permit a "fair and accurate" valuation of the marital property and enough evidence for a meaningful review of that division on appeal. *Spauldin v. Spauldin,* 945 S.W.2d 665, 669 (Mo.App. 1997). We find no abuse of the circuit court's broad discretion in assigning values to and dividing marital property. *Mehra v. Mehra,* 819 S.W.2d 351, 357 (Mo. banc 1991).

McKinley appeals the circuit court's awarding $20,506.78 in attorney fees to Rhodus. She first contests the timeliness of Rhodus' motion for attorney fees, and she emphasizes the inequity of the $20,506.78 award in comparison to the $3100 judgment to Rhodus recommended by Commissioner Walker after the rehearing.

Rhodus filed a motion for attorney fees on March 10, 1996. This filing was within the 30–day limit imposed by Rules 73.01(a)(5) and 75.01. The circuit court had not entered a final judgment in the case when Commissioner Walker reopened the case to hear additional evidence as to the values of four items of property. A recommendation to order the payment of attorney fees is within a commissioner's powers in matters assigned to the family court division of the circuit court, which include "[a]ll actions or proceedings governed by chapter 452." Section 487.080, RSMo 1994.

McKinley does not cite, nor do we find, any controlling authority for the argument that the attorney fees awarded to Rhodus must be proportionate to Rhodus' recovery. She contends that, because proceedings from which the attorney fees accumulated resulted in a judgment for Rhodus of only $3100, awarding him $20,506.78 for attorney fees constituted an abuse of discretion.

An abuse of discretion occurs when the order awarding attorney fees is against the logic of the circumstances, arbitrary, and unreasonable. *Crawford v. Crawford,* 986 S.W.2d 525, 533 (Mo.App. 1999). McKinley's argument that an award for fees must be proportional to the recovery those fees gain is illogical. Fees are incurred regardless of the result they achieve.

The General Assembly set the standard for awarding attorney fees in divorce actions in § 452.355.1. That statute states:

The court from time to time after considering all relevant factors including the financial resources of both parties, the merits of the case and the actions of the parties during the pendency of the action, may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding pursuant to sections 452.300

to 452.415 and for attorney's fees, including sums for legal services rendered . . .

The circuit court is an expert in the necessity, reasonableness, and value of fees. *Crews v. Crews,* 949 S.W.2d 659, 671–72 (Mo.App.1997). Commissioner Walker derived the amount of the recommended award from detailed records entered as evidence of the fees Rhodus' counsel incurred in connection with the motion to vacate judgment and subsequent hearings.

As to the issues that the circuit court must consider pursuant to § 452.355, we find no abuse of discretion. Evidence of the parties' resources was varied and highly contested. Commissioner Walker recommended a finding that McKinley "did not accurately disclose" the values of bank accounts, a pension plan, and two bonus plans at trial. Among the factors to consider in awarding attorney fees is the extent to which the other party's conduct required the expense of attorney fees or unnecessarily engendered increased litigation expenses. *T.B.G. v. C.A.G.,* 772 S.W.2d 653, 655 (Mo. banc 1989). McKinley does not argue that she lacks financial resources to pay the fees. For these reasons, we affirm the circuit court's award of $20,506.78 to Rhodus for attorney fees.

McKinley also asserts that the circuit court did not value and distribute marital assets, including bank accounts held by Rhodus and his interests in hay, crops, and feed at his family farm. The point relied on refers only to undistributed bank accounts. Issues raised only in the argument portion of the brief are not preserved for review. *Lush v. Woods,* 978 S.W.2d 521, 524 (Mo.App.1998).

The circuit court awarded Rhodus $4000 as his marital interest in "[h]is Kearney Trust personal checking account." McKinley argues that the account's value was actually $6758 and that Rhodus owned two other accounts which the circuit court did not distribute. McKinley requests that we remand the case for the circuit court to determine the values of the accounts and to distribute them. We decline.

McKinley attempted to introduce evidence regarding the bank accounts at an evidentiary hearing on February 9, 1996. When McKinley began to cross-examine Rhodus about the funds in question, Commissioner Walker sustained an objection to the evidence, stating that "the issues are framed by the pleadings. There is no pleading requesting affirmative relief on behalf of [McKinley]." McKinley made an offer of proof concerning the accounts, but we find nothing in her offer of proof establishing that the accounts existed on February 9, 1996, and what their balances were.

Should McKinley have evidence of undistributed property, the proper procedure is a separate suit in equity. *Chrun v. Chrun,* 751 S.W.2d 752, 755 (Mo. banc 1988). We, therefore, do not review the merits of the point.

PATRICIA BRECKENRIDGE, Presiding Judge, concurs. ALBERT A. RIEDERER, Judge, was a member of the panel during oral arguments but resigned from the court before it issued this opinion.