**Ross H. TAYLOR, Appellant–Respondent,**

v.

**Karen S. TAYLOR, Respondent–Appellant.**

**Nos. WD 56272, WD 56322.**

Missouri Court of Appeals, Western District.

Feb. 15, 2000.

Bruce Rene Anderson, Kansas City, for appellant.

James Franklin Ralls, Jr., Liberty, for respondent.

Before Presiding Judge LAURA DENVIR STITH, Judge VICTOR C. HOWARD and Judge THOMAS H. NEWTON.

LAURA DENVIR STITH, Presiding Judge.

Ross Taylor (Husband) appeals the trial court's judgment and decree of dissolution of his marriage to Karen Taylor (Wife). Husband alleges the trial court erred in (1) classifying more than four-ninths of his 401k plan as marital property, and (2) awarding one-half of that marital portion of his 401k plan to Wife. Wife cross-appeals, asserting the trial court erred in (1) failing to award spousal maintenance to Wife, and (2) failing to award attorney's fees to Wife. Finding no error in any of the respects alleged, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Karen Taylor and Ross Taylor were married on June 9, 1982. At the time of the marriage, Husband was employed as an airline pilot and Wife worked for the same airline as a ticketing agent. Shortly after their marriage, Husband and Wife had their first child and Wife quit her job in order to stay at home and care for the child. A second child was born in 1986.

In 1995, Wife began working for a staffing service, which placed her in temporary accounting or payroll positions at different companies. In 1996, Wife took a full-time position with one of the companies at which she had previously worked on a temporary basis. Later in 1996, Wife became involved in an extramarital affair with her employer at that company. Husband discovered Wife's affair and requested that they attend marital counseling in order to save the marriage. Despite counseling, Wife remained involved in the extra-marital affair. On April 14, 1997, Husband filed a petition for dissolution of marriage.

On April 16, 1998, the dissolution action was heard before the trial court. At trial, Husband presented evidence concerning the designation of certain property as marital or non-marital, as well as concerning his desire to continue a relationship with his children through visitation. Wife did not attend the hearing except through counsel. The court adjourned the hearing until May 11, 1998, in order to give Wife the opportunity to present her evidence. At the continued hearing, Wife explained she was absent from the April 16 hearing because she had wrongly believed that the hearing was continued. More specifically, Wife explained that she discovered that a

vacation she planned to Las Vegas, Nevada with her daughter coincided with the hearing scheduled for April 16, 1998. She contacted her attorney's office and spoke with a secretary about rescheduling the hearing. When wife did not hear from anyone, she incorrectly assumed that the date for the hearing had been changed. Thus, Wife went on her vacation, missing the hearing. Wife also testified about her financial position, especially focusing on her and the children's monthly expenses.

After hearing Wife's evidence, the court entered a judgment dissolving the Taylors' marriage. The court awarded both Husband and Wife joint legal custody of the two children, and awarded primary physical custody of the children to Wife, subject to Husband's reasonable visitation. Husband was ordered to pay $1,431 each month for child support, and was to be responsible for the payment of any uninsured or deductible amounts relating to health care, dental care and hospitalization of the children. The court also divided the marital property and debts and ordered the sale of the marital residence, but denied Wife's request for maintenance and attorney's fees.

Wife filed a motion to amend the judgment, requesting that the court: (1) make a more equal division of the marital property and debt; (2) direct Husband to pay his child support arrearage in full; (3) correct the value of the 401k plan; (4) change the classification of certain property from non-marital to marital; (5) grant Wife maintenance; and (6) award Wife attorney's fees. The court entered an amended judgment of dissolution on August 14, 1998. In its amended judgment, the court entered new findings of fact relating to Husband's payment of the child support arrearage and the valuation of the 401k plan, but did not amend its denial of Wife's request for maintenance or attorney's fees.

Husband appeals and Wife cross-appeals.

## II. STANDARD OF REVIEW

On appeal of a dissolution of marriage proceeding, we review the evidence in the light most favorable to the trial court's decision. *Replogle v. Replogle*, 903 S.W.2d 551, 553 (Mo.App.1995). We will affirm the trial court's decree unless there is no substantial evidence to support the decision, the decision is against the weight of the evidence, or the decision erroneously declares or misapplies the law. *Crews v. Crews*, 949 S.W.2d 659, 663 (Mo.App.1997). The party challenging the dissolution decree has the burden of demonstrating error. *Id.*

The trial court has wide discretion in determining whether a maintenance award is appropriate. *Ellis v. Ellis*, 970 S.W.2d 416, 417 (Mo.App.1998). We defer to the trial court's findings even if the evidence could support a different conclusion because the trial court is in a better position to judge witness credibility, sincerity, character and other intangibles not revealed in a transcript. *Id.* The trial court's decision regarding maintenance will not be reversed absent an abuse of discretion. *Id.* Likewise, the trial court's division of property will be disturbed on appeal only if it is so "heavily and unduly weighted in favor of one party as to amount to an abuse of discretion." *Crews*, 949 S.W.2d at 663. The trial court's decision in awarding attorney's fees will be reversed only upon a finding of abuse of discretion. *Halupa v. Halupa*, 943 S.W.2d 272, 278 (Mo.App. 1997).

## III. DISTRIBUTION OF 401k PLAN EARNINGS

Husband asserts the trial court erred in designating $97,000 of his 401k plan as marital property without setting aside both the contributions made prior to marriage, and the interest earned on those funds, as his separate property.

Generally, any property acquired by a spouse prior to marriage is that spouse's separate property upon dis-

solution of marriage, and any property acquired during the marriage is marital property subject to division upon dissolution of marriage. Sec. 452.330.2 RSMo Cum.Supp.1996. *See In re Marriage of Medlock*, 990 S.W.2d 186, 188 (Mo.App. 1999). Because the acquisition of some types of property may be an on-going process, beginning prior to marriage and continuing through the marriage, where the character of the property is contested, the "source of funds" rule determines the character of the property as marital or separate. *Hoffmann v. Hoffmann*, 676 S.W.2d 817, 824 (Mo. banc 1984). Under the source of funds rule, the character of property is determined by the source of funds used to finance the purchase of the property and the property is considered to be acquired as it is paid for. *Id.; In re Marriage of Medlock*, 990 S.W.2d 186, 188 (Mo.App.1999). If there is an increase in the value of property which is part marital and part non-marital, the spouse contributing the non-marital funds and the spouse contributing the marital funds each receive a proportionate and fair return on their investment. *Meservey v. Meservey*, 841 S.W.2d 240, 245 (Mo.App.1992).

The evidence at trial showed that, prior to marriage, Husband worked for Frontier Airlines. Beginning in 1977 he began making payments to Frontier's retirement plan. Nothing in the record shows whether those payments were made continuously and in even amounts throughout the time Husband worked for Frontier, whether he contributed on a sporadic basis, or whether he began with small contributions and increased them overtime. The record shows only that Husband married in 1982, that he went to work for another employer, U.S. Airways, in 1986, and that by the time he left Frontier's employ in 1986, the account was valued at $35,000. It is unclear what portion of the account was due to earned interest or contributions made to the plan by the employer. However, it is clear that $30,000 of the retirement funds were rolled-over into a 401k plan with U.S. Airways. The remaining $5,000 was cashed and spent by Husband and Wife. After the initial transfer of $30,000, Husband made no further contributions to the new 401k plan. At the time of the trial, the 401k plan had grown in value to approximately $112,000.

Husband asserts that, because he was married during only four of the nine years during which he made contributions to the retirement fund, only four-ninths of the $112,000 in the fund at the time of dissolution should be considered marital property subject to division. In support of his argument, Husband cites to *Hall v. Hall*, 804 S.W.2d 411 (Mo.App.1991). In *Hall*, the trial court calculated the percentage of the retirement plan which was marital by comparing the length of the marriage to the length of the time contributions were made to the plan. *Id.* at 414. The Court of Appeals approved this calculation on the facts of that case, but it did not suggest that this was the only proper method by which to calculate what portion of a retirement fund or pension account is marital. To the contrary, it specifically held:

> Pension benefits may be properly considered as marital property. The trial court possesses broad discretion in identifying marital property. Under Section 452.330.3, all property acquired by either spouse subsequent to marriage is presumed to be marital property regardless of how title is held. A spouse who claims such property to be non-marital must assume the burden of rebutting the presumption by clear and convincing evidence.

*Id.* (citations omitted).

In *Hall*, the evidence supported a finding that 59% of one account was marital property. *Hall* also held that the trial court did not err in treating all of certain other accounts as marital property where wife claimed they were marital and established their existence during the marriage, their present value, and that contributions were made to them during the marriage, and husband "failed to offer any evidence

showing what portion of the accounts, if any, constituted his separate property." *Hall,* 804 S.W.2d at 415.

Similarly, in *In re Marriage of Medlock,* 749 S.W.2d 437 (Mo.App.1988), husband asserted that because he had worked for his employer for 26 years, and because the parties were only married for 20 years, 6/26ths of the pension should have been considered his separate property. *Medlock* rejected husband's argument, concluding husband did not meet his burden of demonstrating error in the trial court's allocation of his pension benefits because husband failed to present evidence from which the trial court could have determined when husband's pension rights began to accrue. *Id.* at 440. *See also Hubbs v. Hubbs,* 870 S.W.2d 901 (Mo.App.1994) (when there is no evidence detailing specific amounts of non-marital property in pension, court is not required to classify any portion as non-marital).

■ Here, no request was made for the trial court to make findings of fact and conclusions of law, and the trial court did not choose to specify what method it used to determine that Husband's share of the 401k plan was $15,000. In the absence of findings, we review only to see whether, resolving all inferences in favor of the trial court's ruling, there was substantial evidence to support its decision. *Judy v. Judy,* 998 S.W.2d 45, 49 (Mo.App.1999); *Cowen v. Cowen,* 869 S.W.2d 774, 775 (Mo. App.1994).

There was evidence to support the court's decision here. The only evidence Husband presented to the court relating to the marital character of the 401k plan was the date that he started contributing to the retirement plan, the date that he stopped contributing to the plan, and the value of the account at the end of his contributions. Husband failed to produce any evidence regarding the method by which he made contributions to the plan or the exact amounts he contributed to the retirement plan prior to or during marriage. With no evidence detailing the specific amounts which Husband contributed prior to the marriage in 1982, the trial court would have been justified under *Hubbs* and *Medlock* in refusing·to classify any portion of the 401k plan as non-marital property. The court clearly determined, in awarding Husband $15,000 of the 401k plan as non-marital, that some of the contributions to the retirement account must have been made prior to marriage. Based on the lack of specific evidence surrounding the retirement contributions, the court's determination that $15,000 represented Husband's share in the 401k plan, and that the remaining contributions and earnings were marital, was not an abuse of discretion.

## IV.  MAINTENANCE

■ Wife contends the trial court erred in denying her request for maintenance because, she asserts, the evidence showed she had insufficient assets to meet her reasonable needs, and she was unable to support her needs through appropriate employment.

■ The trial court may award maintenance only if it finds the spouse seeking maintenance: (1) lacks sufficient property, including marital property apportioned to the spouse during the dissolution, to provide for his or her reasonable needs; and (2) is unable to meet his or her reasonable needs through appropriate employment. Sec. 452.335.1 RSMo 1994; *Halupa,* 943 S.W.2d 272. Even if the spouse seeking maintenance once relied upon the other spouse for monetary support, he or she still has a duty to attempt to become self-sufficient through employment. *In re·Marriage of Liljedahl* 942 S.W.2d 919 (Mo.App.1996).

Here, the trial court denied maintenance without making express findings as to Wife's reasonable needs, or as to Wife's expected level of income from her assets and employment. Such findings are not necessary in the absence of a motion for findings of fact under Rule 73.01, however. Where no specific findings are requested,

we presume the trial court resolved all factual conflicts in favor of the result reached. *Judy,* 998 S.W.2d at 49.

Here, the evidence showed that Wife stated in her statement of income and expenses that she and the children needed approximately $4,399 per month to meet their reasonable needs.[1] At trial, however, Wife admitted on cross-examination that several of the items in her statement of expenses had been based on general estimates, and she conceded that, in fact, her and the children's expenses were lower in several areas.

Specifically, Wife agreed to the following reductions in her reasonable needs from those as stated in her income and expense statement: (1) her $100 monthly gas and oil allocation was reduced to $75 per month; (2) her $35 monthly water allocation was reduced to $20 per month; (3) her $100 monthly electric allocation was reduced to $40; and (4) her $600 monthly food allocation was reduced to $500. In addition, Wife admitted that her estimated expense statement was based on an amended statement she had submitted to the trial court, and that in the amended statement she had increased the amount she said she spent for numerous items. Thus, she increased her original estimate of the monthly cost of cable television from $30 to $46, of appliances and furniture from $100 to $200, and of the newspaper from $10 to $15. Furthermore, although her expense statement listed a $100 monthly installment contract payment and $35 per month for a security system, Wife did not explain the $100 installment contract payment, and she admitted that she and Husband had never had a security or alarm system during the marriage and

that she had not even thought about having a security system until her attorney mentioned she should get one. In addition, the trial court ordered Husband to pay the remaining balance on Wife's car loan, canceling Wife's $243 monthly car payment which had been listed on her income and expense statement. If the court were to reduce her estimated expenses by the total of these amounts, her original estimation of $4,399 in monthly expenses, would be reduced to approximately $3,700 per month.

The trial court ordered Husband to pay $1,431 per month in child support. Subtracting this amount from the $3,700 in expenses means Wife needed approximately $2,269 per month in additional income for her expenses.

The evidence showed Wife was able to earn that amount of income. Although Wife was absent from the work force for a significant period of time while she stayed at home to care for her children, Wife possesses a bachelor's degree from a state university, and did not have difficulty in returning to full-time employment in 1996. Wife herself testified she plans to continue to work full-time, and that she can earn $13 per hour, or $2,253 per month. In addition, there was evidence that Wife would receive $26,000 from the sale of the marital residence[2] and had a $20,000 judgment against her former spouse. She is not required to use these assets to meet her monthly expenses. *Monsees v. Monsees,* 908 S.W.2d 812, 817–18 (Mo.App.1995). Similarly, the funds in the retirement accounts are not readily available without the imposition of penalties, and should not be considered. *See*

1. Wife's statement failed to break down which expenses were for her and which were for the children, but the nature of some of the expenses showed they were for the children. For example, the statement listed expenses for both a beauty shop and a barber shop, and in testifying, Wife stated that her food allocation included expenses for her and the children, as well as enough food for her children's friends who often ate at their home.

2. The Court valued the marital residence at $260,000. Assuming a $260,000 sale price, after full satisfaction of the $154,000 note, and any potential real estate commissions estimated at the standard 7%, which would be $18,200 on a sale price of $260,000, the proceeds would net $87,800. Wife was to be awarded 30% of these proceeds, or $26,000.

*Van Natter v. Van Natter,* 988 S.W.2d 110, 113 (Mo.App.1999). However, the court can consider any income she might reasonably be expected to earn on her $46,000 in assets in determining her reasonable needs. *Van Natter,* 988 S.W.2d at 110; *In re Marriage of Clarke,* 950 S.W.2d 11, 13 (Mo.App.1997). There was evidence that a conservative investment of these assets would net Wife $3,000 per year, or $250 per month.

The court could have considered Wife's estimated monthly expenses as ranging from $4,399 to $3,700, and her income, including $250 per month in interest earned from investments, $2,253 in monthly income, and the child support of $1,431 per month, as ranging up to $3,934. On these facts, the trial court did not abuse its discretion in determining that Wife's income is sufficient to meet her reasonable needs, and did not err in denying Wife maintenance.

## V. ATTORNEY'S FEES

■ Wife asserts the trial court erred in failing to award her at least a portion of the $7,500 she incurred in attorney's fees because, she argues, the evidence shows that, based on her income and the allocation of debt set aside to her by the trial court, she did not have sufficient resources to pay her attorney's fees, and Husband's financial condition was far superior to her financial condition.

■ Section 452.355 authorizes an award of attorney's fees in dissolution cases "after considering all relevant factors including the financial resources of both parties." Sec. 452.355.1 RSMo Cum. Supp.1998. *See also, Calhoun v. Calhoun,* 934 S.W.2d 14 (Mo.App.1996). It is within the trial court's discretion whether or not to award attorney's fees under Section 452.355. *Glenn v. Glenn,* 930 S.W.2d 519, 525 (Mo.App.1996). To demonstrate an abuse of discretion, the complaining party must show the trial court's decision was against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice. *Id.*

■ Here, Wife emphasizes her need for attorney's fees by arguing that she earns approximately one-quarter of what Husband earns, and that she has more expenses. The fact that Husband's income exceeds Wife's, standing alone, does not compel the award of attorney's fees. *See Nelson v. Nelson,* 937 S.W.2d 753, 757 (Mo.App.1997). Similarly, Wife's financial need is only one factor for the court to consider. *Id.*

■ Here, we note Husband had various financial obligations, including child support, and that Wife was awarded liquid marital assets and was able to support herself through employment. Moreover, as Husband notes, the court was free to consider the conduct of Wife during the marriage, specifically her extra-marital affair, *Halupa,* 943 S.W.2d at 278–79, as well as Wife's conduct during the litigation, in that she missed the first scheduled hearing. *Calhoun,* 934 S.W.2d at 15. The court may also consider the extent to which the conduct of one spouse required the other spouse to expend funds on attorney's fees. *Runyan v. Runyan,* 907 S.W.2d 267, 273 (Mo.App.1995). On these facts, denial of Wife's request for fees does not appear so unreasonable and arbitrary as to shock our sense of justice. Thus, we conclude that the trial court did not abuse its discretion in denying Wife an award of attorney's fees.

For these reasons, the judgment is affirmed.

Judge VICTOR C. HOWARD and Judge THOMAS H. NEWTON, Concur.