**David K. RHODUS, Respondent,**

v.

**Leslie R. McKINLEY, Appellant.**

**No. WD 59747.**

Missouri Court of Appeals, Western District.

March 19, 2002.

Richard J. Koury, II, Independence, for appellant.

David K. Holdworth, Liberty, for respondent.

Before JAMES M. SMART, JR., Presiding Judge, HAROLD L. LOWENSTEIN, Judge and JOSEPH M. ELLIS, Judge.

JOSEPH M. ELLIS, Judge.

Leslie R. McKinley appeals from the circuit court's judgment declaring that David K. Rhodus has satisfied the judgment ordering him to execute a promissory note in favor of McKinley in the amount of $33,205, pursuant to a dissolution decree. McKinley argues that Rhodus owes her more than $8,000 in interest and contends that the trial court used the wrong date in calculating the interest due on her judgment against Rhodus.

McKinley and Rhodus were married on October 17, 1992. On September 22, 1995, Commissioner Michael Walker entered a "Judgment of Dissolution" to dissolve the marriage and distribute property. The judgment included the following statement:

> [T]hat to effectuate an equitable division of the marital property, Petitioner [Rhodus] shall execute a Promissory Note in favor of Respondent [McKinley], in the amount of $42,200.00; secured by a Deed of Trust on the former marital domicile. This promissory note shall bear interest at the judgment rate of 9% per annum. The Deed of Trust and Promissory Note shall be prepared by Respondent's (sic) attorney and delivered to Respondent's attorney within 30 days of the entry of these findings and recommendations.

Rhodus filed a motion for rehearing in circuit court. The circuit court denied the motion on October 20, 1995, and made the following docket entry: "Motion for rehearing taken up and denied. Findings

and recommendations adopted and confirmed."

Rhodus subsequently asked the circuit court to vacate the judgment, claiming discovery of assets not included in the dissolution decree. On February 14, 1996, Commissioner Walker "re-opened"[1] the case to reconsider division of the parties' property and to address Rhodus' request for attorney fees. On December 30, 1996, Commissioner Walker issued a "judgment" awarding Rhodus attorney fees of $20,506.78 and an additional sum of $3,100, as his interest in McKinley's pension. The "judgment" stated, "in all other respects, the terms of the Judgment of Dissolution, entered 10–20–95, remain in full force and effect."[2]

Rhodus appealed and McKinley cross-appealed. We dismissed the appeal for lack of jurisdiction, because we have "no jurisdiction to consider appeal of a 'judgment' signed by a court commissioner." *Rhodus v. McKinley*, 972 S.W.2d 557, 558 (Mo.App. W.D.1998) ("*Rhodus I* "). We also determined that the circuit court judge's docket entry dated October 20, 1995, was not a judgment because "the court did not denominate it a judgment, and the Supreme Court has interpreted its rules as prohibiting consideration of an order not denominated a judgment as a final, appealable judgment." *Id.* at 559.

On March 10, 1999, Rhodus filed a motion asking the circuit court to make a nunc pro tunc entry to denominate the docket entry of October 20, 1995, a "Judgment." Rhodus also asked the court to enter a judgment adopting and confirming the findings from the judgment dated December 30, 1996. The circuit court entered a judgment granting Rhodus' motion on April 21, 1999. Both parties filed timely appeals.

On February 8, 2000, this court handed down its opinion in *Rhodus v. McKinley*, 16 S.W.3d 615 (Mo.App. W.D.2000) ("*Rhodus II* ").[3] In that case, we first determined that the commissioner's findings and recommendations had been adopted by the circuit court. "The circuit court issued judgments in which it adopted and confirmed Commissioner Walker's decisions of September 22, 1995, and of December 30, 1996." *Id.* at 618. In addition, we held that the trial court erred in valuing McKinley's remaining herd of cattle and, therefore, remanded the case "with instruction that [the trial court] reduce the value of '[McKinley's] herd' from $20,895 to $11,900, and that it reduce Rhodus' promissory note to McKinley by $8995 to $33,205." *Id.* at 619.

On June 20, 2000, the circuit court filed an Amended Judgment Pursuant to Appel-

---

1. In a prior opinion, we questioned whether the family court commissioner's action was proper but did not resolve the matter. "[W]e are doubtful that a family court commissioner has authority to 'reopen' a case to grant rehearing once the circuit court has adopted and confirmed the commissioner's findings and recommendations" but "we do not address the issue in this case." *Rhodus v. McKinley*, 16 S.W.3d 615, 618 (Mo.App. W.D. 2000).

2. Commissioner Walker apparently believed that the docket entry dated October 20, 1995, was a judgment. We determined on appeal that it was not a judgment. *Rhodus v. McKin-*

ley, 972 S.W.2d 557, 559 (Mo.App. W.D. 1998).

3. Initial review of the record on appeal created a concern that there was still not a final appealable judgment entered in the case. Accordingly, out of concern over a further delay in the final disposition of this case, this court directed the circuit court to enter another judgment while the appeal was pending. The circuit court did so on January 6, 2000. In our opinion in *Rhodus II*, however, we recognized, as explained in the main text, *infra*, that our initial review of the record was incomplete and the entry was unnecessary.

late Mandate. The amended judgment reduced the value of McKinley's herd of cattle and deleted the language regarding the promissory note, substituting the following paragraph:

[T]o effectuate an equitable division of the marital property, Petitioner to execute a Promissory Note in favor of Respondent in the amount of THIRTY–THREE THOUSAND TWO HUNDRED AND FIVE DOLLARS AND NO/100 ($33,205.00); secured by a Deed Of Trust on the former marital domicile. This Promissory Note shall bear interest at the judgment rate of nine percent (9%) per annum. The Deed of Trust and Promissory Note shall be prepared by Petitioner's attorney and delivered to Respondent's attorney within (30) days of the entry of this judgment.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Orders of the prior Judgments of this Court shall, pursuant to the Opinion and Mandate of the Western District Court of Appeals, remain in full force and effect.

On September 7, 2000, Rhodus deposited a payment of $8,671.18 with the Clerk of the Clay County Circuit Court, which he contended was the amount owed to McKinley. In making his calculations, Rhodus determined that the "judgment date" of the dissolution was January 6, 2000, the date on which the judgment entry was made while the appeal was pending. Rhodus then used that date to calculate the interest owed on McKinley's $33,211.55 judgment, determining that he owed $2,006.55 in interest, for a total of $35,211.55.

Rhodus then determined that he was entitled to a setoff in the amount of $26,540.37, which included his judgments for $3,100 and $20,506.78 in attorney fees, plus $2,933.59 in interest. Rhodus calculated the interest due him from April 21, 1999. After subtracting the setoff from the amount he owed McKinley, Rhodus determined that McKinley was entitled to $8,671.18. Rhodus made his deposit and also entered a Demand for Acknowledgment of Satisfaction.

On September 21, 2000, McKinley filed her Suggestions in Opposition to the Computation of Sum By Petitioner for Complete Satisfaction of Judgment. McKinley argued that Rhodus still owed her almost $8,000 because interest on her judgment began accruing on September 22, 1995. According to her calculations, she was entitled to $14,913.00 in interest and a total judgment of $48,113.99.

McKinley also disagreed with Rhodus regarding the amount of interest due on his judgment, claiming that he was entitled to $8,072.34 in interest which began accruing on December 30, 1996, which was the date the Commissioner entered his recommended judgment in favor of Rhodus. Thus, after taking into account the setoff amount of $31,679.12, McKinley argued she was entitled to $16,439.87.

On February 5, 2001, the circuit court determined that Rhodus had satisfied the judgment with his payment of $8,671.18 to McKinley.

On March 13, 2001, McKinley filed her notice of appeal.

 In her only point on appeal, McKinley argues that the trial court erred in calculating interest on her judgment from January 6, 2000, and asserts that interest should be calculated from September 22, 1995. She contends that the trial court made two "nunc pro tunc corrections" to her judgment on April 21, 1999, and January 6, 2000. She claims that these "corrections" were not amended judgments, and should, therefore, relate back to September 22, 1995, which was the

"original date of the entry of the judgment of dissolution."

■ "The appellant appeals from the Rule 74.11(c)[4] special orders of the trial court, which are to be reviewed the same as any other judge-tried case, under the standard set forth in *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976)." *Gaunt v. State Farm Mut. Auto. Ins. Co.,* 24 S.W.3d 130, 133 (Mo.App. W.D.2000) (internal citation omitted). "As such, we will affirm the orders of the trial court unless there is no substantial evidence to support them, they are against the weight of the evidence, or they erroneously declare or apply the law." *Id.*

■ McKinley attempts to characterize the court's entries dated April 21, 1999, and January 6, 2000, as "nunc pro tunc corrections" to the "judgment" of September 22, 1995. In doing so, she correctly states the rule that nunc pro tunc orders, which correct clerical errors in judgments, "relate back to the original judgment and do not constitute a new judgment." *Pirtle v. Cook,* 956 S.W.2d 235, 241 (Mo. banc 1997). But McKinley's contention that the trial court's entries were valid "nunc pro tunc" orders is incorrect. *See Ballinger v. Rhees,* 39 S.W.3d 842, 843 (Mo.App. W.D. 2000) (holding that a "docket entry or separate document" is not a judgment unless a judge signs it and labels it a "judgment" or "decree," and that a circuit court's entry of an order nunc pro tunc purporting to amend a docket entry that did not constitute a judgment is invalid); *Keck v. Keck,* 996 S.W.2d 652, 654 (Mo.App. E.D.1999)(holding that nunc pro tunc orders can only correct clerical errors in "judgments" and cannot be used to create retroactive judgments because to do so

would undermine "the express language of 74.01(a) and the reasons for its creation").

On February 8, 2000, we handed down our opinion in *Rhodus II.* In that appeal, we treated the trial court's entry of April 21, 1999, as the final appealable judgment. We implicitly recognized that the part of the April 21, 1999, judgment purporting to amend nunc pro tunc the docket entry of October 20, 1995 was invalid. *See Ballinger,* 39 S.W.3d at 843. But the efficacy of the April 21, 1999, judgment was not dependent on that provision. The April 21, 1999, judgment adopted and confirmed the entry of December 30, 1996, which by its terms adopted and confirmed the entries of October 20, 1995, and September 22, 1995. Thus, the April 21, 1999, judgment (a) adopted and confirmed the Commissioner's findings and recommendations of December 30, 1996, amending the findings and recommendations of September 22, 1995; (b) recognized and approved of the October 20, 1995, docket entry denying the motion for rehearing and affirming the findings and recommendations of September 22, 1995; and (c) adopted and confirmed the findings and recommendations of September 22, 1995.

With this understanding of the posture of the case, we come then to the precise issue raised in this appeal, to wit, whether the trial court erred in finding that Rhodus had satisfied in full the monetary judgment awarded to McKinley in the April 21, 1999, judgment. From our recitation of the facts, *supra,* in particular that Rhodus calculated that the interest payable to McKinley began to accrue on January 6, 2000, it is apparent that the calculation adopted by the trial court was flawed and

4. Rule 74.11(c) states: "If a judgment creditor who has received satisfaction of a judgment fails to acknowledge such satisfaction immediately, any interested person may apply to the court where the judgment was entered for an order showing satisfaction."

the case must be remanded.[5] For the sake of judicial economy, however, we will briefly address relevant matters.

In *Rhodus II,* we held that the circuit court had erred in valuing McKinley's remaining herd of cattle. We remanded the case to the circuit court "with instruction that it reduce the value of '[McKinley's] herd' from $20,895 to $11,900, and that it reduce Rhodus' promissory note to McKinley by $8,995 to $33,205." *Id.* at 619. By its Amended Judgment Pursuant to Appellate Mandate of June 20, 2000, the trial court did exactly as instructed by our opinion. The question, then, is from what date did interest accrue on Rhodus' debt to McKinley, and on McKinley's debt to Rhodus for partial attorney fees and his interest in her pension.

The Commissioner's findings and recommendations of September 22, 1995, and December 30, 1996, while made on those respective dates, did not become a judgment of the court until the "Judgment" of April 21, 1999, was entered. The portion of the April 21, 1999, judgment awarding Rhodus $20,506.78 in attorney fees and $3,100 for his interest in McKinley's pension was affirmed on appeal. *Id.* at 620–21. Accordingly, interest on those amounts began to accrue as of April 21, 1999. In addition, we affirmed the award of the promissory note from Rhodus to McKinley in order to equalize the division of marital property, albeit we instructed the court to reduce the amount because it had erred in valuing McKinley's remaining herd of cattle. *Id.* at 619. Specifically, we reversed the trial court's valuation of McKinley's remaining herd, declared the correct amount, and instructed the circuit court to reduce the amount of the promis-

sory note by the amount of the over-valuation, $8,995. *Id.*

Consequently, we affirmed the trial court's decision to equalize the division of marital property and the court's method of doing so, but directed the court to correct the amount. The rule in such cases has been stated by our Supreme Court:

In most cases where a money award has been modified on appeal, and the only action necessary in the trial court has been compliance with the mandate of the appellate court, the view has been taken that interest on the award as modified should run from the same date as if no appeal had been taken, that is, ordinarily, from the date of entry of the verdict or judgment. It has been so held regardless of whether the appellate court reduced or increased the original award.

*Senn v. Commerce–Manchester Bank,* 603 S.W.2d 551, 553 (Mo. banc 1980) (quoting Annot. 4 A.L.R.3d 1221, 1223 (1965)). Thus, interest began to accrue on the amount owed to McKinley by Rhodus as of the date the judgment was entered on April 21, 1999.

Since the trial court calculated the interest due to McKinley only from January 6, 2000, we must reverse and remand the case to the trial court for further proceedings not inconsistent with this opinion.

All concur.

---

**5.** This court may well have contributed to the confusion by virtue of the events discussed in note 3, *supra.*