Rosemary HENNING, Appellant–Respondent,

v.

Rodney R. HENNING, Respondent–Appellant.

No. WD 59580.

Missouri Court of Appeals, Western District.

April 9, 2002.

David H. Johnson, Kansas City, MO, for Appellant–Respondent.

James D. Boggs, Kansas City, MO, for Respondent–Appellant.

Before ROBERT G. ULRICH, P.J., PATRICIA A. BRECKENRIDGE and LISA WHITE HARDWICK, JJ.

ROBERT G. ULRICH, P.J.

Rosemary Henning (Wife) appeals the trial court's judgment dissolving her marriage to Rodney Henning (Husband) and distributing property. She claims that the trial court erred in (1) denying her claim for a share of the parties' 1999 income tax refund and (2) failing to award her maintenance. Husband cross-appeals claiming that the trial court abused its discretion in dividing the marital property and debt not disposed of by the parties' mediation agreement. The judgment of the trial court is affirmed, and the case is remanded with directions.

Husband, age 58, and Wife, age 56, were married in October 1989. No children were born of the marriage. Prior to the marriage, Wife was employed by "The House," a gift and clothing shop, as the buyer and manager of the gift department. In May 1984, Husband's retail card shop business, Henning's Card Shops, Inc. (Henning's), purchased "The House" and operated the business under its original name until 1992.

In the spring of 1985, Husband created the position of buyer for Henning's and promoted Wife to the position. During the next five years until her marriage to Husband, Wife worked as the buyer of Henning's; continued to manage "The House"; managed many of the personnel matters for Henning's; assisted in selling stores in Beatrice, Nebraska, and Red Oak, Iowa; and helped open a store in St. Joseph. At the time of the parties' marriage, Wife was earning approximately $55,000 to $60,000 per year and had acquired 1141 shares of Henning's stock. Husband had 16,852 shares of stock at the time of the marriage.

After the parties' wedding in 1989, some of Wife's duties at Henning's changed. She continued to do all of the buying, managed all personnel matters, operated the warehouse and oversaw the office. Wife stopped managing "The House" in 1992 after it was closed and moved to Gladstone. Shortly after the wedding, the company accountant recommended that only one of the parties receive a salary to save in social security taxes. Wife, therefore, did not receive any salary from Henning's from 1991 until 1997. In 1997 and 1998, Wife received a salary, and Husband did not.

At the time of the parties' wedding in 1989, Henning's owned eight retail outlets. During the ten-year marriage, Henning's opened additional shops. Husband and Wife devoted extensive time and energy to the business. Each year of the marriage, they received approximately $250,000 from Henning's, which included salary and payment of many of their expenses including regular house cleaning; all of their automobile expenses; daily lunches; dinners at restaurants two to four times a week; health insurance, deductibles, and co-pays; and all of their personal travel, including pleasure trips. The parties also acquired an additional 6175 shares of Henning's stock during the marriage. Finally, the parties acquired an interest in several brewpubs in Des Moines, Iowa, and in Kansas City. In February 1999, Wife's employment with Henning's was terminated by Husband, and the parties separated. Wife filed her petition for dissolution of marriage in March 1999, and Husband filed his counter-petition. Prior to trial, Husband and Wife entered into a settlement/mediation agreement, which assigned values to and

divided much of their marital property. Following trial, the trial court issued its judgment dissolving the parties' marriage. Following a motion by Husband for judgment nunc pro tunc and to amend/reconsider the judgment, the trial court entered its judgment nunc pro tunc. Pursuant to the parties' settlement agreement, the court awarded Husband property valued at $834,434. Wife received property valued at $486,920 and a cash payment from Husband of $173,751.31. The trial court also resolved the remaining issues. Each party received the stock in Henning's that the party acquired before marriage. Husband was awarded the 6175 shares of Henning's stock acquired during the marriage valued by the court at $268,612.50 and was ordered to pay marital debt owed to Henning's in the amount of $558,464.86. Husband was awarded 401(k) and IRA accounts totaling $84,091.26. Wife was awarded 401(k) and IRA accounts totaling $70,358.74.[1] Each party was awarded personal property and household goods in that party's possession. Finally, the trial court denied Wife's claim for maintenance but awarded Wife $15,000 in attorney's fees and restored her maiden name. This appeal by Wife and cross-appeal by Husband followed.

## Standard of Review

The judgment of the trial court in a dissolution proceeding will be affirmed on appeal unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *Evans v. Evans*, 45 S.W.3d 523, 526 (Mo.App. W.D.2001). The evidence is reviewed in the light most favorable to the trial court's decision, and all evidence contrary to the judgment is disre-

garded. *Evans*, 45 S.W.3d at 526. The party challenging the dissolution judgment has the burden of demonstrating error. *Taylor v. Taylor*, 12 S.W.3d 340, 344 (Mo. App. W.D.2000).

The trial court has broad discretion in distributing property and in determining whether a maintenance award is appropriate. *Evans*, 45 S.W.3d at 526; *Taylor*, 12 S.W.3d at 344. The trial court's decision regarding maintenance will not be reversed absent an abuse of discretion. *Taylor*, 12 S.W.3d at 344. Likewise, an appellate court will only interfere with the trial court's division of property if the division is so unduly weighted in favor of one party as to constitute an abuse of discretion. *Id.*

## I. Wife's Appeal

### A. Undistributed Income Tax Refund

In Wife's first point on appeal, she claims that the trial court erred in failing to divide the parties' 1999 income tax refund. She contends that because no evidence was adduced at trial regarding the 1999 income tax refund, the trial court should have reopened the case for reception of such evidence. Wife requests this court to reverse the trial court's judgment and remand the case for an evidentiary hearing as to the nature and extent of the income tax refund and for division of the asset.

In *Spauldin v. Spauldin*, 945 S.W.2d 665 (Mo.App. W.D.1997), this court dismissed an appeal from a judgment dissolving the parties' marriage because the judgment did not distribute all of the property identified as marital. *Id.* at 668. It held:

> [W]hen undistributed property is discovered before the time for appeal has run, the appellate court, when presented with

---

1. Wife received $27,169.74 of the amount by Qualified Domestic Relations Order.

an appeal raising the issue of undistributed property, must dismiss the appeal because the trial court has not exhausted its jurisdiction and has not rendered a final judgment from which an appeal can be taken.

*Id.* (quoting *Meltzer v. Meltzer,* 775 S.W.2d 120, 120 121 (Mo. banc 1989)(quoting *State ex rel. McClintock v. Black,* 608 S.W.2d 405, 406 (Mo. banc 1980))). Wife complained on appeal that the trial court did not distribute certain property consisting of stock, a life insurance policy with a cash value, proceeds from a contract of the parties, and the parties' interest in four cooperatives. *Id.* at 667. Although the trial court had evidence before it of the existence of this property and Wife's proposal to set it aside to Husband, it failed to distribute the property, and this court dismissed the appeal. *Id.* at 668.

The case of *Rhodus v. McKinley,* 16 S.W.3d 615 (Mo.App. W.D.2000), also involved a claim on appeal that the trial court did not value and distribute certain marital assets in its judgment dissolving the parties' marriage. *Id.* at 621. In *Rhodus,* after the commissioner recommended a judgment to the trial court and Husband filed a motion for rehearing in the trial court, the commissioner reopened the case to reconsider division of the parties' property. *Id.* at 617. At the evidentiary hearing before the commissioner, Wife attempted to introduce evidence regarding bank accounts. *Id.* at 621. The commissioner sustained an objection to this evidence finding that Wife had not filed a pleading requesting affirmative relief. *Id.* Wife then made an offer of proof regarding the accounts. *Id.* This court declined Wife's request for remand to determine the value of and to distribute the undistributed bank accounts because Wife made no pleading requesting affirmative relief and Wife's attempted offer of proof did not establish existence or value of the assets.

*Id.* This court explained that the proper remedy in the case, should Wife have evidence of undistributed property, is a separate suit in equity. *Id.* (citing *Chrun v. Chrun,* 751 S.W.2d 752, 755 (Mo. banc 1988)).

The instant case is similar to *Rhodus.* The issue of the income tax refund was brought to the trial court's attention by Wife in the hearing on Husband's "Motion for Judgment Decree Nunc Pro Tunc and to Amend Judgment and for Reconsideration of Judgment." The stated purpose of the hearing was to identify administrative errors and to allow the trial court to reconsider its judgment based on existing evidence. The motion did not seek the trial court's order to reopen the case for additional evidence. Although Wife did not file a post-judgment motion for the trial court to reopen the case to receive additional evidence, she, through her attorney, argued at the hearing on Husband's motion that the parties received a 1999 income tax refund in the amount of $44,000 or $46,000 that was not addressed in the dissolution decree and that should have been divided equally between the parties pursuant to their mediation agreement. Unlike in *Spauldin* where evidence had been introduced at trial regarding the undistributed assets, in this case, Husband argued, and Wife admitted, that no evidence regarding the refund was offered at trial. Additionally, Wife did not make an offer of proof concerning the existence or value of the income tax refund on the date of the hearing. For these reasons, Wife's request that this court remand the case for an evidentiary hearing on the issue is declined. *Rhodus,* 16 S.W.3d at 621. Should Wife have evidence of undistributed property, the proper procedure is a separate suit in equity. *Id.* The merits of this point are, therefore, not reviewed. The issue of the proper division of the 1999 income tax

refund was not litigated. The case is remanded, however, for the trial court to strike from the judgment nunc pro tunc paragraph XXIX, mislabeled XIX, which states that Wife's claim to the income tax refund is denied.

### B. Maintenance

In her second point on appeal, Wife claims that the trial court erred in failing to award her maintenance. She contends that the evidence presented at trial reveals that she lacks sufficient property to provide for her reasonable needs and is unable to support herself through appropriate employment.

A trial court may award maintenance only if it finds that the spouse seeking maintenance (1) lacks sufficient property, including marital property apportioned to her, to provide for her reasonable needs, and (2) is unable to support herself through appropriate employment. § 452.335.1, RSMo 2000. To proceed under the statute, the court must first determine the reasonable needs of the spouse seeking maintenance. *McIntosh v. McIntosh*, 41 S.W.3d 60, 67 (Mo.App. W.D. 2001). Under section 452.335, "reasonable needs" is the standard for determining the expenses properly allowable to a party seeking maintenance. *Nichols v. Nichols*, 14 S.W.3d 630, 636 (Mo.App. E.D.2000). In determining whether to award maintenance, "reasonable needs" as used in section 452.335 does not automatically equal the standard of living established during the marriage. *Id.* The standard of living established during the marriage is merely one factor to be considered. *Id.*; § 452.335.2(4), RSMo 2000.

After determining the reasonable needs of the spouse seeking maintenance, the court must then determine whether the spouse is able to provide for these needs through use of property or

appropriate employment. *McIntosh*, 41 S.W.3d at 67–68. Spouses are encouraged to become self-sufficient by fulfilling their duty to seek employment. *Ansley v. Ansley*, 15 S.W.3d 28, 33 (Mo.App. W.D.2000).

The trial court did not make express findings regarding Wife's reasonable needs and was not required to make such findings of fact absent a motion for findings of fact under Rule 73.01. Where no specific findings are requested, the appellate court presumes that the trial court resolved all factual issues in accordance with the result reached. Rule 73.01(c); *Taylor*, 12 S.W.3d at 346–347. Wife testified to and listed in her income and expense statement expenses of $9000 per month. Included in these expenses were clothing and accessories of $500 per month, recreation (including dinner at restaurants) of $600 per month, home maintenance and cleaning of $250 per month, gifts of $150 per month, and travel of $300 per month. Wife testified that during her marriage, she and Husband received from Henning's, in addition to their salary, payment of many of their expenses including regular house cleaning; all of their automobile expenses; daily lunches; dinners out two to four times a week; health insurance, deductibles, and co-pays; and all of their travel, including pleasure trips. Wife's testimony and the figures in her income and expense statement indicate that she expects to enjoy the "luxurious lifestyle" that she enjoyed during her marriage. Given that the standard of living during the marriage does not automatically establish the same level of need subsequent to dissolution, items such as vacations, recreation, and gifts are the types of needs that are most scrutinized. *Nichols*, 14 S.W.3d at 636 n. 5. Accordingly, the trial court had discretion to conclude that Wife's expense figures for vacations, recreation, gifts, and other expenses exceeded

the amount required to meet her reasonable needs. Furthermore, Wife listed in her expenses a monthly tax liability of $3,000 that would reduce her expendable income by that sum. She testified that the figure was based on a monthly gross income of $9,000. Wife, however, only listed income from employment, rentals, dividends, and businesses of $5,253.01 per month. The trial court, therefore, had discretion to determine that Wife's tax liability per month based on her income figures would be considerably less than $3,000.

Next, the trial court found that Wife is fully capable of meeting and exceeding her reasonable needs through employment and income-producing property. Regarding Wife's employment, the trial court made the following specific findings:

> The Petitioner has testified that she has not sought employment during the pending of this case upon the advisement of her attorney. At the time this case was heard, she was not employed even though this divorce has been on file since the 4th day of March, 1999. The Petitioner has admitted in her testimony that her job skills and education in the retail industry make her capable of earning an income in excess of $100,000. She has testified that her only hindrance in obtaining such employment [is] the limited number of job openings with that salary. She has testified she could obtain employment with a salary of $36,000 to $40,000 per year at the present time and that such jobs are available in the retail industry.

The court's findings were supported by substantial evidence in the record. Wife admitted that she had been unemployed since the parties' separation in February 1999 except for a two-week period in June 1999 when she did some consulting work for a shop in Colorado. She testified that

emotional distress caused by the breakup of her marriage and the termination of her employment with Henning's prevented her from seeking new employment. Wife admitted that her attorney advised her not to seek employment because of the status of the suit for dissolution of her marriage.

Wife has worked in the retail business since 1980. She began as the buyer and manager of the gift department of "The House" and eventually managed the entire store after it was purchased by Henning's. Over time, Wife was promoted to buyer for Henning's, and she resolved personnel matters and assisted in selling and opening new stores. At the time of her wedding, Wife was earning approximately $55,000 to $60,000 per year. During the marriage, Wife's job duties increased yet again. She began handling all personnel matters for Henning's, running the warehouse, and overseeing the office for the business, which had gross revenues of $12 million per year and 120 to 150 employees. Wife admitted that based on this experience in the retail industry, she is qualified to work for a large greeting card business, such as Hallmark Cards, earning $120,000 per year. She testified at trial and argues on appeal, however, that such jobs represent only a small fraction of the job market in the retail industry and are currently unavailable to her. She testified that she could more likely obtain a job in the industry earning between $36,000 to $40,000 per year. In conjunction with this testimony, Wife listed in her income and expense statement income from employment of $3,000 per month. Wife admitted, however, that she has not approached any privately owned stores about employment as a manager or as a buyer. The trial court did not abuse its discretion in finding that at a minimum Wife could earn $36,000 per year and could potentially earn over $100,000 per year to support herself.

Wife also received by the dissolution judgment substantial income producing property. Wife was awarded specific marital property valued at $486,920 pursuant to the parties' settlement/mediation agreement. Included in this property were rental property and an interest in several loans. Wife listed in her income and expense statement an income of $2,253 per month from this property.

Wife also received a cash payment award from Husband in the amount $173,751.31 to equalize the property division. Husband also paid to Wife temporary maintenance of $2,500 per month from January through December 2000 for a total of $30,000. Wife testified that she invested $100,000 in a certificate of deposit and $25,000 in a money market account, both paying 5.25% per year. Wife, however, did not list a monthly income from these sources, which would amount to $550. The trial court could properly consider the amount of interest income Wife could reasonably expect to earn on identified funds in determining whether she needed maintenance to meet her reasonable needs. *Taylor*, 12 S.W.3d at 348; *In re Marriage of Swanson*, 904 S.W.2d 88, 91 (Mo.App. S.D.1995).

The trial court did not abuse its discretion in concluding that Wife could provide for her reasonable needs through appropriate employment and income from marital property apportioned to her. The trial court did not err in failing to award Wife maintenance. Point two is denied.

## II. Husband's Appeal—Division of Marital Property and Debts

In his sole point in his cross-appeal, Husband claims that the trial court abused its discretion in dividing the marital property and debt not disposed of by the parties' mediation agreement. Husband argues that the division was contrary to the parties' desire for an equal distribution as embodied in their mediation agreement and that none of the factors of section 452.330 justified the disproportionate division.

In compliance with the parties' mediation agreement, the trial court awarded Husband marital property valued at $834,434. Wife received marital property valued at $486,920 and a cash payment from Husband of $173,751.31. The trial court then awarded the remaining property not referenced by the mediation agreement. It valued the Henning's stock at $43.50 per share and set aside to each party the Henning's stock that the party acquired before marriage. Husband had 16,852 shares, and Wife had 1141 shares. The court then awarded Husband 6175 shares of Henning's stock the parties acquired during the marriage and allocated to Husband marital debt owed to Hennings in the amount of $558,464.86. Husband was awarded 401(k) and IRA accounts totaling $84,091.26, and Wife was awarded 401(k) and IRA accounts totaling $70,358.74. Each party was awarded personal property and household goods in that party's possession. The court did not value the personal property and household goods. The total amount of marital property Husband received had a net value of $449,859 (38%), and Wife received marital property with a net value of $729,092 (62%).

Section 452.330 governs the disposition of property and debts in a dissolution of marriage proceeding and mandates a two-step process for their division and award. *Rawlings v. Rawlings*, 36 S.W.3d 795, 797 (Mo.App. W.D.2001). The trial court must first set aside to each spouse the party's nonmarital property and then divide the marital property and marital debts in such proportions as the court deems just after considering all rele-

vant factors. § 452.330.1, RSMo 2000. Relevant factors include:

(1) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children;

(2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

(3) The value of the nonmarital property set apart to each spouse;

(4) The conduct of the parties during the marriage; and

(5) Custodial arrangements for minor children.

*Id.* These factors are not exclusive, and no formula is recognized respecting the weight to be given each factor. *Rawlings,* 36 S.W.3d at 798. The division of marital property and debts need not be equal but must be fair and equitable given the circumstances of the case. *Id.* That one spouse is awarded a higher percentage of marital assets does not per se constitute an abuse of discretion. *Id.*

■■■ Considering all relevant factors and the circumstances of the case, the trial court's division of marital property was just. Husband was awarded the Henning's stock that he owned prior to the marriage, a significant majority of the stock in the business. His nonmarital stock, 16,852 shares, was valued at $733,062. Husband also received all of the marital stock in Henning's, 6175 shares valued at $268,612.50. Thus, Husband was awarded stock in Henning's worth over $1 million. In comparison, Wife's ownership interest in Henning's is very small. Husband also retained control over an ongoing business and an income-producing

asset. The trial court did not, therefore, abuse its discretion in allocating to Husband the marital debt owed to Henning's by the parties.

■■■ Husband's argument that the trial court's division of marital property and debt was contrary to the parties' desire for an equal division as expressed in their mediation agreement also fails. Section 452.325 allows parties to enter into a written separation agreement containing provisions for the disposition of any property, the terms of which are binding on the parties unless the trial court finds the agreement unconscionable. § 452.325.1 and .2, RSMo 2000. Absent such an agreement, the trial court must divide the marital property according to section 452.330.1 in such proportions as the court deems just after considering all relevant factors. *In re Marriage of Thompson,* 27 S.W.3d 502, 507 (Mo.App. S.D.2000); *Schlottach v. Schlottach,* 873 S.W.2d 928, 931 (Mo.App. E.D.1994); *Peirick v. Peirick,* 641 S.W.2d 195, 196–197 (Mo.App. E.D.1982); § 452.330.1, RSMo 2000. The parties' mediation agreement divided some marital property equally with Husband agreeing to pay to Wife a sum equal to one-half of the difference between the total value of the assets received by Husband in the agreement and the total value of assets received by Wife in the agreement. The "equal division" provision of the agreement, however, applied only to those assets disposed of by the agreement. The agreement did not dispose of all the parties' marital property, and the trial court was, therefore, obligated to divide the remaining marital property according to section 452.330.1. *See Satterfield v. Satterfield,* 635 S.W.2d 80, 81 (Mo.App. E.D. 1982)(where parties stipulated as to the disposition of all of the marital property and separate property with the exception of the marital home, the appellate court

found no fault with the trial court's division of the marital home after consideration of the factors of section 452.330). The trial court's division of marital property was supported by substantial evidence. Husband's point is denied.

The judgment of the trial court is affirmed, and the case is remanded with directions consistent with this opinion.

BRECKENRIDGE and HARDWICK, JJ., concur.