

# In the Missouri Court of Appeals
## Eastern District
### DIVISON FOUR

| | | |
|---|---|---|
| GEORGE C. CULE, | ) | No. ED100694 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | St. Louis County |
| vs. | ) | |
| | ) | |
| ODETA C. CULE, | ) | Honorable Thomas J. Frawley |
| | ) | |
| Appellant. | ) | Filed: January 27, 2015 |

## *Introduction*

Odeta Cule (Wife) appeals the judgment and decree of dissolution of marriage to George Cule (Husband) entered by the Circuit Court of St. Louis County. Wife claims that the trial court erred in: (1) awarding joint legal and physical custody of their children without making specific findings as required upon a finding of domestic violence; (2) including in the judgment an abatement provision regarding Husband's support obligation; (3) awarding Husband the rental property as separate property; and (4) denying maintenance to Wife. We affirm in part and reverse and remand in part.

## *Factual and Procedural Background*

Husband and Wife married in September 1994. During their marriage, Wife gave birth to the parties' son, M.C., in 1996 and their son, E.C., in 2001.

At the time Husband and Wife married, they resided in a four-family flat with Husband's aunt, who owned the building (the Jamieson property). In March 1997, Husband's aunt

transferred title to the Jamieson property by quit claim deed to Husband. Husband's aunt died in 1998. In September 2002, Husband was a resident alien of the U.S. and Wife was a U.S. citizen. On September 17, 2002, Husband transferred title to the Jamieson property into the joint names of Husband and Wife. Three days later, Husband received his green card.

In 2004, Husband and Wife purchased a house (the marital residence), and the family moved out of the Jamieson property and into the marital residence. Husband continued to use the Jamieson property as a residential rental property.

Husband and Wife separated in March 2010. On March 22, 2010, the trial court issued Wife a full order of protection. The order awarded Husband visitation with the children on alternate weekends.

On August 2, 2010, Husband filed his petition for dissolution of marriage. In his petition, Husband requested sole legal and physical custody of M.C. and E.C. Husband also filed a statement of property in which he claimed the Jamieson property as inherited, separate property. Wife filed her counter-petition, requesting, among other things, that the trial court award: (1) sole legal and physical custody of the children to Wife "due to [Husband's] physical and emotional abuse"; and (2) maintenance to Wife because she was "without sufficient income, funds, and resources to provide for her reasonable needs." Wife also filed a statement of property showing the Jamieson property as marital property.

On November 1, 2010, the trial court entered an order pendente lite and interim custody order. The order pendente lite ordered Husband to pay Wife $613 per month for support of their children. In the interim custody order, the court awarded Husband custody of the children on Wednesdays from 6:30 to 8:30 pm and Saturdays and Sundays from 10:00 am to 7:00 pm. The order further instructed Husband to pick up and drop off the children at the marital residence.

2

On April 20, 2011, the court entered an order (referral order) requiring Husband and Wife to exchange custody of M.C. and E.C. at the St. Louis County Exchange Center (Exchange Center). The order also modified Husband's visitation times to Wednesdays at 6:30 p.m. and 8:30 p.m., Saturdays at 10:00 a.m. and 4:00 p.m., and Sundays at 4:00 p.m. and 8:00 p.m.

Starting in May 2011, Wife "frequently" asked Sandra Ford, an Exchange Center employee, to advise Husband to pick up and drop off the children at the marital residence because she was unable to transport the children to and from the Exchange Center. Wife's notice regarding pick up location was often untimely, causing Husband to travel to the Exchange Center and then travel to the marital residence to exercise his visitation rights. On September 10, 2011, Ms. Ford informed Wife that the Exchange Center would no longer be responsible for directing Husband to pick up the children at the marital residence instead of the Exchange Center.

On November 9, 2011, M.C. told Ms. Ford he wished to discontinue visitation with Husband, and he has not participated in visitations with Husband since that date. On March 1, 2012, Husband filed a motion for contempt, alleging, among other things, that Wife failed to enforce the court-ordered schedule for visitation.

On May 11, 2012, the trial court held a hearing on the petition for dissolution. Husband, Wife, M.C., E.C., and the children's guardian ad litem (GAL) testified. In her testimony, the GAL recommended that it was in the children's best interests to "spend time with both parents" and believed that custodial exchanges between Husband and Wife should occur at the Exchange Center.

On June 14, 2013, the trial court issued its 62-page findings, conclusions and judgment of dissolution of marriage. In its findings, the trial court stated that: (1) "Husband has engaged in a pattern of domestic violence during the marriage; nevertheless, the best interests of the minor

3

children require that Husband and Wife be awarded joint legal and joint physical custody of the minor children"; (2) "Wife has intentionally, willfully and contumaciously interfered with the exercise by Husband of his … right [under the court's order pedente lite and referral order] to visitation with [M.C.] since November 9, 2011"; (3) the Jamieson property was separate property belonging to Husband; and (4) Wife had "sufficient property, including marital property apportioned to her, to provide for her reasonable needs and earns, or is capable of earning, an income sufficient to support herself." Based on these findings, the trial court: (1) awarded joint physical and legal custody of M.C. and E.C.; (2) ordered that Husband's support obligation for either M.C. or E.C. "shall abate from and after November 9, 2011 during each week or month, as the case may be, in which [M.C. or E.C.] fails, or has failed, without good cause, to participate in a court ordered period of physical custody with Husband"; (3) awarded Husband the Jamieson property; and (4) denied Wife's request for maintenance.

In July 2013, Husband and Wife each filed motions to amend the judgment, or in the alternative, motions for new trial. In her motion, Wife alleged, among other things, that the trial court erred in: (1) awarding joint legal and physical custody of the children because substantial evidence did not support the award; (2) including a "'penalty' clause against [Wife] that allows child support to abate for each child from and after November 9, 2011"; (3) awarding the Jamieson property to Husband as separate property; and (4) denying her maintenance. The trial court held a hearing on Husband's and Wife's motions. Following the hearing, the trial court entered an order denying Wife's claims. Wife appeals.

### Standard of Review

We will affirm the trial court's judgment of dissolution of marriage unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously

4

declares or applies the law.  Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976).  We view the evidence and permissible inferences therefrom in the light most favorable to the trial court's judgment and disregard all contrary evidence and inferences.  Maninger v. Maninger, 106 S.W.3d 4, 9 (Mo.App.E.D. 2003).  Where the testimony is in conflict, we defer to the trial court's determinations of witness credibility.  Vanderpool v. Vanderpool, 250 S.W.3d 791, 795 (Mo.App.S.D. 2008).

*Discussion*

1. Statutorily required findings regarding pattern of domestic violence

In her first point, Wife asserts that the trial court erred in awarding joint legal and physical custody of M.C. and E.C. without making written findings detailing the relevant factors as required by sections 452.375.6[1] and 452.375.2(6).[2]  Specifically, Wife contends that, because the court found a pattern of domestic violence and awarded joint custody, section 452.375.2(6) required the trial court to make specific findings of fact and conclusions of law demonstrating that the custody arrangement: (1) is in the best interests of the children; and (2) best protects the victims of domestic violence.  Husband counters that the trial court did not err because the judgment included written findings that "substantially complied" with section 452.375 in that

---

[1] Section 452.375.6 requires the trial court to enter written findings based on each of the relevant statutory factors under subsection 452.375.2 regarding the best interests of a child when the parties do not agree on a custodial arrangement.  Mo. Rev. Stat. § 452.375.6.

[2] Subsection 452.375.2(6) requires a trial court to consider the mental and physical health of all individuals when determining what custody arrangement is in the best interests of a child. Specifically, subsection 452.375.2(6) provides that:

> [i]f the court finds that a pattern of domestic violence as defined in section 455.010 has occurred, and, if the court also finds that awarding custody to the abusive parent is in the best interest of the child, then the court shall enter written findings of fact and conclusions of law. Custody and visitation rights shall be ordered in a manner that best protects the child and any other child or children for whom the parent has custodial or visitation rights, and the parent or other family or household member who is the victim of domestic violence from any further harm[.]

subsection 452.375.2(6) does not "prescribe … specific standard[s] or factors that the trial court must address in making its 'specific findings.'"

Wife did not preserve her claim that the trial court failed to make written findings required by section 452.375.6. Rule 78.07(c) requires that "allegations of error relating to the form or language of the judgment, including the failure to make statutorily required findings, must be raised in a motion to amend the judgment in order to be preserved for appellate review." Rule 78.07(c). To preserve the alleged claim of error, a motion to amend a judgment must "specifically challenge[] the failure to make statutorily mandated findings." In re Holland, 203 S.W.3d 295, 302 (Mo.App.S.D. 2006). Wife failed to claim, in her motion to amend the judgment, that the trial court erred in failing to make the statutorily required findings regarding the best interests of the children. Accordingly, her claim is not preserved for our review. See Thomas v. Moore, 410 S.W.3d 748, 755 (Mo.App.W.D. 2013).

Wife similarly did not preserve her claim that the trial court failed to make the statutorily required findings under section 452.375.2(6) after finding a pattern of domestic violence and awarding joint custody. In her motion to amend the judgment, Wife asserted that the trial court's award of joint custody after finding a pattern of domestic violence was against the weight of the evidence. However, she did not specifically challenge the court's failure to make statutorily required findings. Accordingly, Wife's claim is not preserved for our review.

The appellate court may review an unpreserved issue for plain error. Rule 84.13(c); Wilson-Trice v. Trice, 191 S.W.3d 70, 72 (Mo.App.W.D. 2006). However, Wife does not request plain error review nor does she identify evidence in the record demonstrating a manifest injustice or miscarriage of justice. See e.g. id. at 72-73. In fact, Wife does not challenge the trial court's award of joint legal and physical custody but rather maintains only that the trial failed to

6

make statutory findings to support its order. Accordingly, we decline review for plain error. Point dismissed for failure to preserve.

2. Abatement provision

In her second point, Wife asserts that the trial court erred in including an abatement provision in the judgment of dissolution. Specifically, Wife asserts that the trial court "misapplied the law in considering Wife's violation of the Interim Custody Order … and Referral Order … as a basis to abate Husband's child support obligation" because subsection 452.340.7 does not specifically mention such orders in authorizing a court to abate support obligations. Husband counters that the trial court had authority under section 452.340.7 to abate his child support obligation because the court found that Wife failed to provide Husband custody of the children without good cause.

Subsection 152.340.7 authorizes the trial court to order abatement of any past or future child support obligation upon a showing that a parent failed to provide visitation. Walters v. Walters, 181 S.W.3d 135, 140 (Mo.App.W.D. 2005). Specifically, subsection 452.340.7 provides, in pertinent part, that:

> A court with jurisdiction may abate, in whole or in part, any past or future obligation of support and may transfer the physical and legal or physical or legal custody of one or more children if it finds that a parent has, without good cause, failed to provide visitation or physical and legal or physical or legal custody to the other parent pursuant to the terms of a judgment of dissolution, legal separation or modifications thereof.

Mo. Rev. Stat. § 452.340.7.

In the judgment of dissolution, the trial court found that "Wife has failed, without good cause, to provide Husband with his court ordered periods of visitation with [M.C.] since November 9, 2011." The court further found that Wife "has been able to comply, or has intentionally placed herself in a position that has prevented her compliance, with the Order

7

Pendente Lite and the Referral Order to 'The Exchange Center'; therefore, Wife has intentionally, willfully and contumaciously interfered with the exercise by Husband of his court ordered right to visitation with [M.C.] since November 9, 2011." Based on these findings, the court stated "[t]he obligation of Husband to pay … support of [M.C.] shall abate from and after November 9, 2011 during each week or month … in which [M.C.] fails, or has failed, without good cause, to participate in a court ordered period of physical custody with Husband." The court similarly ordered that Husband's obligation to pay support of E.C. shall abate from and after November 9, 2011 during each week or month that E.C. fails or failed, without good cause, to attend a court-ordered period of physical custody with Husband.

We agree with Wife's assertion that the trial court did not have the authority under section 452.340.7 to abate Husband's support obligation based on Wife's failure to comply with the interim custody order and referral order. "The language of [section 452.340.7] limits its application to decrees of dissolution, legal separation or modifications thereof." Gulman v. Gulman, 851 S.W.2d 37, 39-40 (Mo.App.E.D. 1993). "By specifying the circumstances under which a child support obligation will abate, the legislature has impliedly forbidden abatement under all other circumstances." Schubert v. Tolivar, 905 S.W.2d 924, 927 (Mo.App.E.D. 1995). An interim custody order is neither a decree of dissolution, legal separation, nor modification thereof. See Gulman, 851 S.W.2d at 40. Thus, section 452.340.7 did not authorize the trial court to enter the abatement order for Husband's support obligations of either M.C. or E.C. Accordingly, we reverse the trial court's order of abatement and remand to the trial court to correct the judgment consistent with this opinion.

3. Jamieson property

In her third point, Wife asserts that the trial court erred in awarding Husband the Jamieson property as separate property. Wife maintains that the Jamieson property was marital property because: (1) "the property was acquired during the marriage"; and (2) Husband and Wife held joint title to the property. Wife contends that she was prejudiced by the trial court's classification of the Jamieson property as separate property because the award deprived her of her equitable share of the property. Husband counters that the Jamieson property was separate property because he did not intend the property to be a gift to Wife.

The trial court has broad discretion in identifying and dividing marital property, and we will interfere with the trial court's decision only if it amounts to an abuse of discretion. Coughlin v. Coughlin, 823 S.W.2d 73, 75 (Mo.App.E.D. 1991). We presume the trial court's division of property to be correct, and the party challenging the division has the burden of overcoming this presumption. Waite v. Waite, 21 S.W.3d 48, 51 (Mo.App.E.D. 2000).

All property acquired subsequent to a marriage is presumed marital property. Mo.Rev.Stat. § 452.330.3 (2000). However, a spouse can rebut the presumption by presenting clear and convincing evidence that the property falls within one of the categories provided in Section 452.330.2, including that the spouse acquired the property by gift, bequest, devise, or descent. In re Marriage of Maninger, 106 S.W.3d 4, 9 (Mo.App.E.D. 2003).

Contrary to Wife's assertion, the record supports a finding that Husband rebutted the presumption that the Jamieson property was marital property. Although Husband acquired title to the Jamieson property during Husband's and Wife's marriage, Husband presented evidence that his aunt transferred title into his name only and explained that his aunt gave him the property to help provide for his family in Albania.

Wife asserts that the Jamieson property became marital property because Husband transferred title into their joint names. "[P]lacing separate property into the joint names of both spouses creates a presumption that the property has been transmuted into marital property." Clark v. Clark, 919 S.W.2d 253, 255 (Mo.App.S.D. 1996). However, a spouse can overcome the presumption by presenting and clear and convincing evidence that the transfer was not intended as a gift. Id. Whether a spouse intended to make a valid gift is a question of fact for the trial judge to determine, based on the facts and circumstances connected with the transaction. Wills v. Whitlock, 139 S.W.3d 643, 654 (Mo.App.W.D. 2004).

Husband testified that he was the "sole owner" of the Jamieson property. He explained that his aunt transferred title of the Jamieson property to him so he could use the property to support his family "back in Albania." However, Wife "forced" him to put title into their joint names and he transferred title "against my will and against my family." He explained that, in 2002, he was a resident alien and, to obtain his green card, he needed Wife, a United States citizen, to accompany him to an immigration interview. Wife told Husband she would not attend his immigration interview if he did not "put [her] name on that deed." On September 17, 2002, Husband signed the deed transferring title into the joint names of Husband and Wife, and three days later, Husband attended the immigration interview and received his green card.

In its judgment, the trial court rejected Wife's position that Husband transferred the Jamieson property to be held jointly because he intended it to be "part of the marriage." More specifically, the trial court found Wife's account not credible because "(1) eight years elapsed from the date of the marriage until Husband executed the Quit Claim Deed transferring [the Jamieson property] into joint names[;] (2) Husband's immigration interview, which Husband needed Wife to attend, is too close in time to Husband's transfer of [the Jamieson property] into

10

joint names to be purely coincidental[;] and (3) Wife waited until December, 2009, only three months prior to the separation and clearly after the marriage was experiencing difficulty, to execute and record the Quit Claim Deed transferring [the Jamieson property] into joint names."

"When characterizations of property as marital or separate rest on an assessment of witness credibility, this court defers to the trial court's determination of that credibility." Feinstein v. Feinstein, 778 S.W.2d 253, 261 (Mo.App.1989). Because the record contains sufficient evidence to support the trial court's findings that Husband did not intend the Jamieson property to be a gift to Wife, we defer to the trial court's factual determinations on appeal. See In re Marriage of Harris, 154 S.W.3d 456, 457 (Mo.App. 2005).

Finally, Wife asserts that, even if Husband did not intend to transfer the Jamieson property to their joint names, the property is marital nevertheless because it "was used as a marital home, and [W]ife contributed to the property by cleaning and painting the apartments … and taking care of paperwork[.]" At the hearing, Husband testified that Wife was not the landlord of the Jamieson property and she did not have any involvement in the management or maintenance of the property "in any way." Because we defer to the trial court's determination regarding credibility of witnesses and ability to resolve factual disputes, and the record supports the trial court's findings, we conclude that the trial court did not err in finding that the Jamieson property was Husband's separate property. See In re: Marriage of Dolence, 231 S.W.3d 331, 338 (Mo.App. 2007). Point denied.

4. Spousal Support

In her fourth and final point, Wife asserts that the trial court abused its discretion in denying an award of spousal support because she did not possess sufficient property to provide for her reasonable needs and was unable to support herself through appropriate employment.

11

Specifically, Wife asserts that she was unable to meet her reasonable needs because there was a deficiency of $1,601.30 between her monthly expenses of $4,678.00 and her monthly net income of $3,075.70.  Husband counters that Wife had sufficient property to provide for her reasonable needs and was able to support herself through appropriate employment.

We review the trial court's denial of maintenance to Wife for abuse of discretion.  Barton v. Barton, 157 S.W.3d 762, 765 (Mo.App. E.D.2005).  A denial of maintenance will be affirmed on appeal when evidence exists that the party seeking the award can support herself with property or through employment.  In re Marriage of Thompson, 24 S.W.3d 751, 754 (Mo.App.S.D. 2000).

Section 452.335.1 provides that a trial court may award maintenance to a spouse if it finds that the spouse seeking maintenance: (1) lacks sufficient property, including marital property apportioned to her, to provide for her reasonable needs; and (2) is unable to support herself through appropriate employment.  Mo. Rev. Stat. § 452.335.1.  To proceed under the statute, the court must first determine the reasonable needs of the spouse seeking maintenance.  Henning v. Henning, 72 S.W.3d 241, 247 (Mo.App.W.D. 2002).  "After determining the reasonable needs of the spouse seeking maintenance, the trial court must then determine whether the spouse is able to provide for these needs through use of property or appropriate employment."  Id.  The spouse seeking maintenance has the burden to establish that her reasonable needs cannot be met.  Barton, 157 S.W.3d at 766.

As an initial matter, we note that, in asserting that a $1,601.30 deficiency existed between her monthly expenses and monthly income, Wife assumes that the trial court found Wife's monthly expenses were $4,678.00.  However, Wife cites nothing in the trial court's judgment to support that assumption.  The trial court made no express findings regarding Wife's reasonable

12

needs, and it was not required to do so absent a request for findings of fact under Rule 73.01. See Henning, 72 S.W.3d at 247. Where, as here, neither spouse requests specific findings, we presume that the trial court resolved all factual issues in accordance with the result reached — in this case, the denial of maintenance. Rule 73.01(c).[3]

Based on our review, we find that the record contains substantial evidence to support the trial court's finding that Wife possessed sufficient property and was capable of earning an income to provide for her reasonable needs and support herself. The evidence at the hearing revealed that Wife earned a bachelor's degree in mathematics in Albania and a master's degree in computer resources information management from Webster University. In 2005, Wife obtained employment at H&R Block in a "seasonal position." In 2007, she transferred to another division at H&R Block and "picked up more hours." As Wife's certification level and responsibilities increased, so did her salary. In 2010, Wife became an instructor at the Tax Training School and, in 2011, Wife accepted a position as a tax professional at H&R Block. In 2012, Wife worked at H&R Block in a full-time position.

Additionally, in 2010, Wife became a full-time nursing assistant at St. Anthony's Hospital and an hourly translator for Language Access Metro Project (LAMP). Wife testified that in 2011, she earned approximately $21,000 working at St. Anthony's, "a little bit under" $10,000 at H&R Block, and about $2,500 at LAMP, for a total annual salary of approximately

---

[3] With respect to her reasonable needs, Wife presented evidence at the hearing regarding her expenses for herself and the children totaling $4,678.00 per month. The expenses included $1,552.00 under the deed on the marital residence; $333.00 for the marital residence utilities; $252.08 for her automobile payment; $1,240.00 for the children's "other living expenses"; and $780.00 for her "other living expenses." To the extent that Wife suggests that the trial court's calculation of her reasonable needs should have included monthly expenses on behalf of her children, we have held that "expenses attributable to the children are excluded from the calculation of the recipient spouse's reasonable needs for purposes of determining maintenance." Ferry v. Ferry, 327 S.W.3d 599, 602 (Mo.App.E.D. 2010).

$34,000.  Based on Wife's educational background and ability to obtain employment, we conclude that the trial court did not err in finding that Wife could provide for her reasonable needs and earn an income sufficient to support herself.  See Taylor v. Taylor, 12 S.W.3d 340, 347 (Mo.App.W.D. 2000).  Point denied.

### *Conclusion*

The judgment of the trial court is affirmed in part and reversed and remanded in part.


_____
Patricia L. Cohen, Presiding Judge

Roy L. Richter, J., and
Robert M. Clayton III, J., concur.