

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| BRYAN E. DAVIS, SR., | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | WD81868 |
| | ) | |
| CARLETTA VERLICE DAVIS, | ) | FILED: July 16, 2019 |
| Appellant. | ) | |

**Appeal from the Circuit Court of Jackson County
The Honorable Joel P. Fahnestock, Judge**

**Before Division Four:  Karen King Mitchell, C.J., and
Alok Ahuja and Cynthia L. Martin, JJ.**

Carletta Davis ("Wife") appeals from the judgment of the Circuit Court of Jackson County dissolving her marriage to Bryan Davis ("Husband").  Wife raises three Points on appeal.  First, she argues that the circuit court erred in its division of marital property between Husband and Wife.  Second, Wife argues the trial court erred when it awarded Husband and Wife equal parenting time with their son, but characterized its judgment as awarding "sole physical custody" to Husband.  Third, Wife argues the trial court erred when it denied her request for maintenance.

Because Wife was awarded a significant amount of parenting time in the circuit court's parenting plan, the judgment awarded the parties joint physical custody; it did not award Husband sole physical custody.  We accordingly amend the judgment to reflect that Husband and Wife have joint physical custody of their son. We affirm the circuit court's judgment in all other respects.

**Factual Background**

Husband and Wife were married on May 13, 2006. They have three children: two daughters who are over the age of eighteen and now emancipated; and one minor son ("Son"). Husband is employed at the Department of Treasury. Wife worked for the City of Kansas City until 2013, but was unemployed at the time of trial. Husband and Wife separated on April 21, 2016.

On May 11, 2016, Husband filed a petition for dissolution of marriage. In his petition, Husband requested that he and Wife have joint legal and physical custody of Son. Wife filed her answer and counter petition for dissolution of marriage on May 31, 2016. In her counter-petition, Wife requested that she be awarded maintenance.

The original trial date was continued by agreement of both parties due to the withdrawal of Wife's original counsel. A new trial date was set for February 26, 2018. On February 2, 2018, less than a month before trial, Wife's new counsel likewise withdrew. Trial was held as scheduled on February 26, 2018, with Husband represented by counsel, and Wife proceeding *pro se*.

At trial, Husband testified that it was in Son's best interest for Husband to have sole legal and sole physical custody. Although Husband's dissolution petition had requested that the parties be awarded joint legal and physical custody over Son, Husband testified that he now sought sole legal and sole physical custody because Wife had denied him parenting time throughout the pendency of the dissolution proceeding. Husband testified that, from October 2016 to the date of trial on February 26, 2018, he only had ten to fifteen weekends of parenting time with Son. He also testified that, after Husband and Wife separated, Wife moved twice without telling him her new address. Husband testified that when he attempted to exercise his regularly scheduled parenting time with Son, Wife would come up with excuses why it could not happen. Further, Husband testified that

2

Wife changed Son's school after the petition was filed without consulting him, or telling him Son's new school. After Husband identified the school where Son was now enrolled, he learned that Wife had not identified him as Son's father in Son's enrollment paperwork. Husband also testified that Wife got Son a new cell phone, but did not give Son's new phone number to Husband. If he was granted sole legal and sole physical custody, Husband testified that he would allow Wife to have meaningful contact with Son, and would include Wife in decision-making concerning Son.

Husband offered two proposed parenting plans into evidence. The first provided that Husband and Wife would share joint legal and joint physical custody of Son. Husband also offered an updated parenting plan which awarded him sole legal and sole physical custody of Son. While discussing the two plans, Husband's counsel noted that the updated parenting plan awarded the parties the same parenting time as Husband's original proposed parenting plan; only the designation of physical custody as "sole," instead of "joint," differed between the two plans.

Husband requested that property be divided as proposed in his statement of marital and non-marital assets and debts, which was entered into evidence. Relevant to this appeal, Husband's statement provided that his Federal Employment Retirement System account would be awarded in its entirety to Husband, and that Wife would be awarded sole ownership of her City of Kansas City retirement account. Husband did not provide any evidence to the circuit court concerning the value of either account. On his statement Husband identified the house in which the family lived before the separation as his non-marital property.

During Wife's direct testimony she offered a letter from the Social Security Administration which she claimed showed that she was unable to work. Wife requested that she be awarded maintenance because of her inability to work. Wife

3

testified that she was in agreement with having joint legal and joint physical custody of Son.

The court asked Wife how her desired division of property compared to Husband's. Wife requested that she be awarded certain specific household furnishings. Husband indicated that he agreed. The court then asked Wife if she had "[a]ny problems with the property that [Husband] laid of [*sic*], the way he laid it out?" After it was clarified that Husband would need fourteen days to gather the property being awarded to Wife, she stated that she had "no problem, no problem" with the way Husband divided the property. The court again asked Wife: "Any other property issues that you have a problem with? Any other, you know, you heard what [Husband] said about who was going to keep what. Do you have any problems with any of that?" Wife answered "No."

The circuit court's dissolution judgment found that it was in Son's best interest to be in the sole legal and sole physical custody of Husband. Of the eight best interest factors listed in § 452.375.2, RSMo, the trial court found that six favored Husband. The judgment divided parenting time equally between Husband and Wife. The judgment awarded Husband overnight parenting time every Tuesday and Thursday night throughout the year, and on alternating weekends from Friday afternoon until Monday morning. Wife was awarded overnight parenting time every Monday and Wednesday night, and alternating weekends. The judgment also equally divided parenting time on holidays.

The court found that, based on the evidence presented at trial, Wife was not entitled to maintenance. Although "there was evidence [Wife] is currently not working, she provided no evidence she is permanently disabled and can perform no work in the future. She submitted no medical testimony or medical records, and she did not describe current medical treatment. She admitted she was still functional."

4

The court awarded property to the parties consistent with Husband's statement of marital and non-marital assets and debts (modified to reflect Wife's request for certain personal property during her trial testimony). Therefore, the marital home was identified as non-marital property and set over to Husband; Husband was awarded his Federal Employment Retirement System account; and Wife was awarded her City of Kansas City retirement account.

Wife appeals.

## Standard of Review

> An appellate court will affirm a trial court's dissolution of marriage judgment so long as there was substantial evidence to support the trial court's holding, it was not against the weight of the evidence, and it did not erroneously declare or apply the law. On appeal, we view the evidence and inferences "in the light most favorable to the trial court's judgment and disregard all contrary evidence and inferences." "The party challenging the dissolution decree has the burden of demonstrating error."

*Kratzer v. Kratzer*, 520 S.W.3d 809, 813 (Mo. App. E.D. 2017) (citations omitted).

## Analysis[1]

### I.

In her first Point on appeal, Wife argues the trial court erred when it divided Husband and Wife's marital property. Specifically, Wife argues the trial court improperly divided the parties' property without evidence concerning the fair market value of that property. Wife also contends that the court erroneously set the

---

[1] Husband moved to strike Wife's amended Brief and to dismiss the appeal. The motion is denied. While Wife's amended Brief may not fully comply with Rule 84.04 in all particulars, we are able to understand the arguments she makes, and Husband does not contend that his ability to respond to Wife's arguments was prejudiced in any meaningful way. Although we have discretion to strike a brief and dismiss an appeal based on briefing deficiencies, "[t]hat discretion is generally not exercised unless the deficiency impedes disposition on the merits" because we "prefer[ ] to resolve an appeal on the merits of the case rather than to dismiss an appeal for deficiencies in the brief." *Guthrie v. Mo. Dep't of Labor and Indus. Relations*, 503 S.W.3d 261, 266 (Mo. App. W.D. 2016) (citations and internal quotation marks omitted).

marital home apart to Husband as his non-marital property, because (Wife claims) there was evidence that marital funds were expended to pay part of the mortgage debt on the home.

At trial, Husband proposed a division of property consistent with his statement of marital and non-marital assets and debts. Husband's statement was received without objection, and the court's dissolution judgment adopted the salient features of Husband's proposed division. At trial, the circuit court explicitly asked Wife if she had any objections to Husband's proposed property division. After she asked that she receive certain personal property (to which Husband agreed, and which the court ordered), the court asked Wife: "Any other property issues that you have a problem with? Any other, you know, you heard what he said about who was going to keep what. Do you have any problems with any of that?" Wife responded "No."

"A party on appeal generally must stand or fall by the theory on which [she] tried and submitted [her] case in the court below." *Slavens v. Slavens*, 379 S.W.3d 900, 904 (Mo. App. W.D. 2012) (citations, emphasis, and internal quotation marks omitted).[2] In this case, not only did Wife not make any contemporaneous objection to Husband's proposed property division, but she affirmatively stated that she had no objection to that disposition. "'A party cannot complain on appeal about an alleged error in which that party joined or acquiesced at trial.'" *In re Marriage of Cunningham*, 571 S.W.3d 688, 695 (Mo. App. S.D. 2019) (citation and internal quotation marks omitted). Under this "invited error" principle, Missouri courts

---

[2] Although Wife did raise issues relating to the division of property in her motion for new trial, this came too late. "To preserve an issue for appeal to this Court by raising it in her motion for new trial [Wife] was required to present the issue or objection to the trial court during the trial as opposed to raising it for the first time in the motion." *Allen v. Allen*, 330 S.W.3d 838, 839 (Mo. App. S.D. 2011) (citation omitted); *see also Slavens*, 379 S.W.3d at 904 ("Introducing new legal theories in a motion for reconsideration and to amend the judgment does not preserve those newly raised theories for appellate review.").

6

have repeatedly held that an appellant may not challenge an aspect of a property division which that party proposed, or to which that party agreed, in the circuit court. *See, e.g., id.* at 697; *Taylor v. Taylor*, 525 S.W.3d 608, 613 (Mo. App. S.D. 2017); *Torrey v. Torrey*, 333 S.W.3d 34, 39 (Mo. App. W.D. 2010); *Workman v. Workman*, 293 S.W.3d 89, 101 (Mo. App. E.D. 2009).

Because Wife acquiesced in the circuit court's division of marital property, Point I is denied.

## II.

In her second Point, Wife argues the circuit court erroneously applied the law by awarding Husband and Wife equal parenting time, but decreeing that Husband had been awarded "sole physical custody." Wife argues that the custody arrangement ordered by the court constituted *joint* physical custody, and should be characterized as such.

Section 452.375.1(3), RSMo provides that "joint physical custody" "means an order awarding each of the parents significant, but not necessarily equal, periods of time during which a child resides with or is under the care and supervision of each of the parents." "The term 'sole physical custody' is left undefined in the statute. Given the definition of joint physical custody, however, sole physical custody would logically encompass custodial arrangements in which one of the parents is not awarded significant periods of custodial time." *Clark ex rel. Clark v. Ingram*, 380 S.W.3d 607, 608 (Mo. App. W.D. 2012) (citation and internal quotation marks omitted). Therefore, "[t]he determining factor in classifying physical custody arrangements as either joint or sole is whether the periods of physical custodial time awarded to the parents is deemed significant." *LaRocca v. LaRocca*, 135 S.W.3d 522, 526 (Mo. App. E.D. 2004) (citation and internal quotation marks omitted). "'When the court orders significant periods of time where the child is under the care and supervision of each parent, the award is one of joint physical

7

custody, regardless of how the court characterizes it.'" *Ingram*, 380 S.W.3d at 608–09 (citation and internal quotation marks omitted).

In this case, the circuit court's dissolution judgment awarded Husband and Wife equal parenting time: in each two-week period, Husband and Wife have custody of Son for seven nights each, and holidays are also equally divided between Husband and Wife. Because Husband and Wife were awarded equal amounts of parenting time with Son, the circuit court's parenting plan awarded the parties joint physical custody, and the court erred by characterizing its order as an award of sole physical custody to Husband. *King v. King*, 533 S.W.3d 232, 234–35 (Mo. App. W.D. 2017) (judgment which awarded father five overnight visits in every two-week period was properly characterized as awarding joint, not sole, physical custody); *Ingram*, 380 S.W.3d at 609 (parenting plan erroneously stated that it awarded mother sole physical custody where it gave father three overnight visits per two-week period, alternating holidays, and an additional five-day period over the summer); *LaRocca*, 135 S.W.3d at 526 (parenting plan which awarded mother parenting time on two weekdays per week and alternating weekends constituted an award of joint, not sole, physical custody).

Husband argues that the court properly awarded him sole physical custody, because it found that six of the eight best interest factors enumerated in § 452.375.2, RSMo favored him, and that none favored Wife. The circuit court fully considered these factors in deciding how much parenting time to award to each parent. After the court had adopted its parenting time schedule, however, the determinative factor in classifying the type of custody awarded "is whether the periods of physical custodial time awarded to the parents is deemed significant." *Ingram*, 380 S.W.3d at 608 (citations and internal quotation marks omitted). Deciding whether a dissolution decree awards "sole" or "joint" physical custody is solely a quantitative assessment, based on the parenting time awarded to each

8

parent by the court. As explained above, the equal parenting time awarded to Wife in this case is plainly "significant," and the custody award accordingly constitutes joint physical custody under § 452.375.1(3), RSMo.[3]

Although the trial court mislabeled the physical custody award in its judgment, "it is unnecessary to remand for correction of the decree where we can simply recognize and clarify that [Wife] is a joint physical custodian." *Ingram*, 380 S.W.3d at 609 (citations and internal quotation marks omitted). Due to the significant amount of parenting time awarded to Wife in the circuit court's judgment, Husband and Wife have joint physical custody of Son. The judgment of the trial court is amended to reflect that fact. *Id.* (citing Rule 84.14).[4] Because Wife has not challenged the circuit court's separate award of sole _legal_ custody to Husband, that award is unaffected by this opinion.

### III.

In her third Point, Wife argues that the circuit court erred when it denied her an award of maintenance. "The trial court is vested with broad discretion in awarding maintenance. Thus, our Court will not reverse the court's decision absent

---

[3]     We also note that the best interest factors listed in § 452.375.2, RSMo are not a scorecard, and that making a custody determination is not simply a mathematical exercise of determining which parent is favored by the most best interest factors. To the contrary, "there is no specific formula for how a trial court must weigh the non-exclusive list of best interest factors under section 452.375.2 when making its final custody determination." *Dunkle v. Dunkle*, 158 S.W.3d 823, 836 (Mo. App. E.D. 2005) (citation omitted). "Instead, after properly considering those factors, the trial court has broad discretion to determine what arrangement is in the best interests of the children under the particular facts of each case." *Id.* (citation omitted).

[4]     The erroneous designation of physical custody prejudices Wife, and justifies reversal, because "[t]he designation of physical custody as joint physical custody, as opposed to sole or primary physical custody with visitation rights for the other parent, is significant in that it determines the standard for future modification of the physical custody arrangement." *LaRocca*, 135 S.W.3d at 525 (citations omitted). In addition, "there is a stigma that can attach to a parent when the other is named the primary or sole custodian and there is intrinsic value that designation as a joint physical custodian can have for a parent." *Id.* (citation omitted).

9

an abuse of discretion, and we defer to the trial court even where the evidence could have supported a different conclusion." *Sulkin v. Sulkin*, 552 S.W.3d 793, 795–96 (Mo. App. E.D. 2018); *accord Henning v. Henning*, 72 S.W.3d 241, 245 (Mo. App. W.D. 2002).

Section 452.335.1 provides that in a proceeding for dissolution of marriage, a court "may grant a maintenance order to either spouse, but only if it finds that the spouse seeking maintenance: (1) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and (2) Is unable to support himself through appropriate employment." "To proceed under the statute, the court must first determine the reasonable needs of the spouse seeking maintenance." *Cule v. Cule*, 457 S.W.3d 858, 866 (Mo. App. E.D. 2015) (citation omitted). "After determining the reasonable needs of the spouse seeking maintenance, the trial court must then determine whether the spouse is able to provide for these needs through use of property or appropriate employment." *Id.* (citation and internal quotation marks omitted). The burden is on the spouse seeking maintenance to establish that her reasonable needs cannot be met. *Id.* (citation omitted).

Wife first complains that the circuit court's judgment did not make express findings regarding her reasonable needs. The trial court was not required to make express findings as to Wife's reasonable needs, however, because neither spouse requested such findings under Rule 73.01. *Cule*, 457 S.W.3d at 866–67. In addition, Wife failed to argue in her post-judgment motion that the circuit court had failed to make findings concerning her reasonable financial needs, and she therefore failed to preserve the issue for appellate review. Rule 78.07(c). Because neither party requested specific factual findings, "we presume that the trial court resolved all factual issues in accordance with the result reached—in this case, the denial of maintenance." *Cule*, 457 S.W.3d at 867 (citing Rule 73.01(c)).

10

The circuit court denied Wife an award of maintenance based on its determination that, although "there was evidence [Wife] is currently not working, she provided no evidence she is permanently disabled and can perform no work in the future. She submitted no medical testimony or medical records, and she did not describe current medical treatment. She admitted she was still functional." Wife argues that the circuit court's findings are unsupported by substantial evidence. Wife fails to acknowledge, however, that she had the burden of proof to establish her right to maintenance. The circuit court simply found that she had failed to prove that she was unable to support herself through appropriate employment.

> When the burden of proof is placed on a party for a claim that is *denied*, the trier of fact has the right to believe or disbelieve that party's uncontradicted or uncontroverted evidence. If the trier of fact does not believe the evidence of the party bearing the burden, it properly can find for the other party. Generally, the party not having the burden of proof on an issue need not offer any evidence concerning it. [¶] Consequently, substantial evidence supporting a judgment against the party with the burden of proof is not required or necessary.

*Adoption of K.M.W.*, 516 S.W.3d 375, 382 (Mo. App. S.D. 2017) (citations and internal quotation marks omitted). Given that the circuit court's denial of maintenance ruled against the party bearing the burden of proof, that ruling was not required to be supported by substantial evidence.

The circuit court's denial of maintenance, on the basis that Wife had failed to establish her inability to support herself through appropriate employment, did not constitute an abuse of discretion. Although Wife is currently unemployed, "[u]nemployment alone is not enough to require an award of maintenance." *In re Marriage of Clift*, 108 S.W.3d 197, 201 (Mo. App. S.D. 2003) (citation omitted). Wife testified that she was unable to work. In support of her claim, Wife entered into evidence a letter from the Social Security Administration, indicating that it had found her to be disabled. "[A] social security [disability] determination is not binding on Missouri courts" in deciding whether to award maintenance, however.

11

*In re Marriage of Lindhorst*, 347 S.W.3d 474, 476 n.1 (Mo. 2011) (citing *In re Marriage of Liljedahl*, 942 S.W.2d 919, 925 (Mo. App. S.D. 1996)). In addition, evidence at trial indicated that Wife continued to work, for at least some period of time, after the work-related injury that allegedly left her disabled. Moreover, although Wife testified that she takes medication for back pain resulting from a workplace accident, she testified that she is "functional" after taking the medication.

Point III is denied.

## Conclusion

Pursuant to Rule 84.14, we modify the judgment to denominate the custody award as an award of joint physical custody to Husband and Wife. The judgment of the circuit court is affirmed in all other respects (including its award of sole legal custody to Husband).[5]

---

[5] To avoid confusion in the future, we briefly address one additional matter. The circuit court's final judgment entered on April 17, 2018, provided that the presumed amount of child support to be paid by Wife, calculated pursuant to Rule 88.01 and Form 14, was $126.00 per month. The judgment found that this presumed amount was "rebutted as unjust and inappropriate," and ordered that "[n]o child support shall be paid by either party."

On June 12, 2018, the court entered a "Nunc Pro Tunc Judgment of Dissolution of Marriage." The June 2018 judgment repeated the findings from the April 2018 judgment concerning the presumed child support amount and the rebuttal of that amount; it also repeated the statement that neither party would pay child support. In its decretal provisions, however, the June 2018 judgment provided (inconsistently) that Wife "shall pay [Husband] monthly support for the children of $126.00 commencing on the date of this judgment and each month therefrom."

The order of child support in the June 12, 2018 *nunc pro tunc* judgment is void, and has no legal effect. A *nunc pro tunc* judgment is not an appropriate vehicle for an award of child support, where the original judgment expressly denied such an award, since a *nunc pro tunc* judgment may only correct "clerical mistakes," and "must not effect a substantive change to the party's rights." *McGuire v. Kenoma, LLC*, 447 S.W.3d 659, 663 (Mo. 2014) (citation omitted). In addition, the *nunc pro tunc* judgment was entered more than thirty days after the original judgment, and therefore beyond the circuit court's authority under Rule 75.01 to amend the judgment *sua sponte*. "'Once the thirty day period in Rule 75.01 expires, a trial court's authority to grant relief is constrained by and limited to the grounds raised in a timely filed, authorized after-trial motion.'" *State ex rel. Hawley v. Pilot Travel*

12


Alok Ahuja, Judge

All concur.

---

*Ctrs., LLC*, 558 S.W.3d 22, 27 (Mo. 2018) (citation omitted).  Wife was the only one to file a post-judgment motion, and her motion did not address the issue of child support.